[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 449 
James Harvey Callahan was tried and convicted, pursuant to §13A-5-40 (a)(1), Code of Alabama 1975, for the capital felony of kidnapping and, subsequently, murdering Rebecca Howell in Calhoun County, Alabama. After proper sentencing phase hearings before the jury and the trial court, the trial court noted the jury's majority verdict, by a vote of 10 to 2, in favor of the death penalty, and sentenced the appellant to death by electrocution.
Rebecca Howell was abducted from the Norge Village Washeteria in Calhoun County, Alabama, some time between, 12:30 a.m. and 1:30 a.m. on the morning of February 4, 1982. Her body was found about two weeks later floating in Tallaseehatchee Creek near Broughton Bridge, where it had become entangled in some brush. An autopsy revealed that Ms. Howell had been killed by asphyxiation due to an obstruction of her airway, consistent with smothering. Her hands had been bound with four strips of white duct tape. She had apparently been raped. Her body was found in blue jeans but without underpants, shoes, or socks. *Page 450 
Murray Knight, the victim's boyfriend, saw her around 11:15 p.m. on the night she was abducted. Ms. Howell had just gotten off work and was on her way to wash some clothes. She had planned to meet Knight afterwards.
Four blocks from Norge Village Washeteria, Jimmy Dunagan saw a woman with "long, brown or reddish hair" make a telephone call across the street from another washeteria at 11:40 p.m. He also saw a man in a truck, which he later identified as appellant's truck, watching the young woman in the telephone booth. When the woman left, the man followed her in his truck. Dunagan copied down the tag number of the truck, a number later found to be registered to the appellant.
A police officer on routine patrol saw Ms. Howell in the Norge Village Washeteria between 12:30 and 12:45 a.m. A passerby saw a man fitting appellant's description inside the washeteria at 1:00 a.m. apparently trying to "pick-up" a young woman. Susan Bragg, a fellow employee of Ms. Howell, passed by Norge Village Washeteria on her way home from work. She saw a green pick-up truck, which she later identified as appellant's truck, outside the washeteria and she thought someone inside the truck waved at her.
At 1:30 a.m., because Ms. Howell had not returned as expected, Murray Knight and some of his friends went to the washeteria to look for her. She was gone, but the clothes she had been washing were still there and one pair of wet blue jeans was on the floor. Ms. Howell's car was still parked outside. Knight called the police.
The appellant was arrested after a "stakeout" of his father's home on February 22, 1982, five days after Ms. Howell's body had been discovered. After the appropriate Miranda warnings were given and the standard "waiver of rights" forms were signed the appellant told Calhoun County Sheriff Roy Snead that he would help the authorities locate the victim's missing boots and purse. He explained to Snead that he had picked up Ms. Howell at the Norge Village Washeteria on the night she was killed and had driven her to his mobile home. He stated that later that night, while they were driving through the woods near the Tallaseehatchee Creek (where the victim's body was later discovered), Ms. Howell, in her bare feet, jumped out of his truck and ran off through the woods. He contended that he threw her boots out at that time.
A subsequent search for the missing boots in the woods near Tallaseehatchee Creek was unsuccessful. However, the appellant did, eventually, lead the authorities to the victim's missing purse. It was found behind a wood pile at the home of appellant's father-in-law. The appellant stated that he knew it was there because he saw someone put it there, but he never stated who that someone was.
The victim's missing boots were later discovered inside appellant's mobile home by appellant's sister and brother-in-law. They were turned over to the police.
In addition to the incriminating circumstances discussed above, appellant's fingerprints were found on a roll of gray duct tape discovered on the night of the abduction in the parking area outside the Norge Village Washeteria. During a search of appellant's home authorities recovered a strip of white duct tape of the same identical type as that used to bind the victim's wrists. They also discovered some strands of hair, consistent with the victim's head hair, on a mop, and some red carpet fibers identical to a red fiber found on one of the victim's socks. Dog hairs found inside appellant's truck were consistent with the hair from the victim's dog.
Because there was evidence that Ms. Howell had been raped before she was killed, a vaginal swab was analyzed. It was found to contain seminal fluid from a "group O" secretor of H antigens. Tests revealed that Murray Knight, Ms. Howell's boyfriend, is a non-secretor but that the appellant is, indeed, a "group O" secretor.
Furthermore, contrary to appellant's pretrial statement to the authorities that Ms. Howell exited his truck and ran through *Page 451 
the woods near Tallaseehatchee Creek, the medical examiner testified that her feet and ankles were not scratched or cut as they would have been had she run through the thick underbrush in that area.
In defense, the appellant challenged the validity of the search warrants for his truck and his mobile home, the voluntariness of his pre-trial statements, and the reliability of the hair, fiber and biological fluid comparisons. However he only took the witness stand, in his own behalf, to give voir dire testimony as to the voluntariness of his statements to the authorities. He did not present an alibi defense.
 I
Initially, the appellant contends that the trial court erred in denying his motion for a change of venue. The appellant claimed at trial and argues on appeal that a change of venue was warranted because a majority of the prospective jurors in Calhoun County had been exposed to extensive pre-trial publicity and had learned many of the details of the instant offense and some of the details of appellant's background. At the pre-trial hearing on the motion for a change of venue, the appellant presented the results of a public opinion survey which showed that many of the citizens of Calhoun County had "preconceived notions of the appellant's guilt." Approximately 64 percent of those persons who agreed to be interviewed during the appellant's survey answered affirmatively when asked, "Do you believe from the things that you have read or heard that James Harvey Callahan is the person who murdered Rebecca Howell?"
The trial court gave the appellant much latitude in presenting his evidence during the change of venue hearing. The appellant, the state, and the trial court, itself, conducted thorough and sifting examinations of all the witnesses presented. Most of the testimony concerned the validity of the public opinion survey conducted by the appellant. It was revealed that the survey was directed by appellant's counsel, who hired four young women with no training and little or no experience in conducting public opinion surveys. These women conducted telephone interviews with 390 citizens of Calhoun County to determine the impact of the pre-trial publicity upon prospective jurors. The interviewers were instructed to obtain a designated number of responses from the various communities within the County to obtain a fair cross-section of the population, but they received little, if any, instruction as to how to randomly select their interviewees, what to do with incomplete surveys, and how to document non-responses. They were essentially independent from each other and, consequently, handled the selection of interviewees, the incomplete surveys and the non-responses in somewhat inconsistent manners. They did not use any systematic method of randomly selecting those persons called and the results obtained by the four interviewers were not verified in any way. There was no assurance against overlap among the callers and no concrete method used to insure that a particular person called actually lived within the area or community for which his response was needed.
The appellant presented Steve Hoffman, a statistician at Fort McClellen, Alabama, as an expert on public opinion surveys. He stated that, in his opinion, the survey was properly conducted, that it was 95 percent accurate and that it indicated that 64 percent of the population of Calhoun County had preconceived notions of the appellant's guilt due to pre-trial publicity. Upon further examination, however, he stated that he had never conducted a survey of this type, and that his earlier comments about the accuracy of the survey were based on the assumptions that the interviewers received training as to how to conduct the survey, that their results were verified and that the number of non-responses (those who refused to answer the survey) was not excessive. He eventually concluded that the survey was not perfectly scientific and was not conducted in the best manner. The state's expert witness, Glenn Browder, a professor at Jacksonville State University, *Page 452 
testified that he had many years of experience with public opinion surveys, and had conducted 20 to 30 surveys similar to the one conducted by the appellant. He stated that he had taken courses, had taught courses, and had conducted training sessions dealing with public opinion surveys. He emphasized that in the absence of trained interviewers, a systematic method of selecting interviewees to prevent overlap and bias, and a verification of the survey results, the validity of a public opinion survey would be highly suspect. He stated that the excessive number of non-responses might have affected the results and, at the very least, would have prompted him to increase the sampling size to minimize the non-response effect.
During the venue hearing the appellant also presented affidavits from several members of the local news media, affidavits which verified that the publicity surrounding Rebecca Howell's murder had been extensive.
The trial court, which took an active part in investigating the accuracy of appellant's survey, reviewed all of the venue hearing testimony and concluded that appellant's survey was not a reliable reflection of the opinions of prospective jurors in Calhoun County and that the pre-trial publicity was not "of such magnitude or quality" that the appellant would be unable to secure a fair and impartial trial in Calhoun County. The trial court, therefore, denied appellant's change of venue motion.
It is well settled in Alabama that upon motion for a change of venue the defendant has the burden of proving inherent or actual prejudice on the part of the prospective jurors and that the decision on the venue question rests within the discretion of the trial court, unless such discretion is abused. See,Moulds v. State, 426 So.2d 942 (Ala.Cr.App. 1982); Robinson v.State, 430 So.2d 883 (Ala.Cr.App. 1983); Hopkins v. State,429 So.2d 1146 (Ala.Cr.App. 1983); Duncan v. State, 436 So.2d 883
(Ala.Cr.App. 1983); and cases cited in each.
The standards for determining when the defendant's burden of proof has been satisfied and for reviewing the trial court's determination of the venue issue are well established and adequately discussed in our four recent opinions cited above. They need no further treatment herein. We have applied these standards to the instant case and have concluded that the trial court did not abuse its discretion in denying appellant's change of venue motion. We, too, question the validity of appellant's public opinion survey. Moreover, even assuming that the survey is accurate, that 64 percent of the prospective jurors had "preconceived notions of the appellant's guilt," there was no evidence that these prospective jurors would not be able to "lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court."Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589
(1975) [cited in Anderson v. State, 362 So.2d 1296 (Ala.Cr.App. 1978)]. The voir dire examination of the actual jury venire did not indicate any inherent prejudice against this appellant. Prospective jurors who indicated actual bias against the appellant were properly dismissed. Except as noted below, the appellant had no objections to the final jury panel.
From aught that appears in the record the appellant received a fair and impartial trial in Calhoun County.
 II
Appellant's only objection to the final jury panel was his assertion that, in light of § 13A-5-46 (f), Code of Alabama 1975, those veniremen with fixed opinions against the death penalty, should not have been dismissed for cause. Appellant's theory was, and is, that, because § 13A-5-46 (f) now permits a death penalty verdict on the vote of only 10 of the 12 trial jurors, the rationale for dismissing Witherspoon jurors [see,Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968)] no longer applies. In effect the appellant argues on appeal that the Witherspoon *Page 453 
rule should be abolished in Alabama. We disagree.
The appellant cites no authority, and we have found none, to support his arguments. Witherspoon jurors, those irrevocably committed to vote against the death penalty, are appropriately dismissed to insure a fair and impartial jury. A fair and impartial jury is no less necessary now that only 10 jurors are needed for a death penalty verdict.
 III
Appellant's argument that the trial judge erred in refusing to recuse himself is without merit. It appears that the trial judge had earlier assisted Fred Lybrand, an attorney hired by appellant's father, in obtaining access to the appellant in the county jail. At Lybrand's request the trial judge accompanied him to the county jail, interrupted an interrogation session of the appellant being conducted by local investigators, and informed the appellant that he could stop answering questions, if he so desired, and consult with Lybrand. As a result, the interrogation was stopped and the appellant did consult with Lybrand.
Because of this involvement in the case, the appellant made a motion for the trial judge to recuse himself from the case so that he would be available as a witness as to the voluntariness of appellant's statements to authorities. The appellant did not, and does not, contend that the trial judge was in any way incompetent, prejudiced, or biased against him.
In denying appellant's motion, the trial judge explained that, despite his contact with the appellant in the interrogation room at the county jail, he, the trial judge, had not independently learned any of the facts and circumstances surrounding the case, and had learned nothing material to any issue regarding the voluntariness of any of appellant's statements to the authorities. The trial judge further noted that Fred Lybrand was available to the appellant as a witness to the trial judge's involvement, should the appellant, indeed, need a witness to those events.
In Alabama a trial judge should disqualify himself in a case where he has personal knowledge of disputed facts and circumstances of the case or where he is likely to be a material and necessary witness. See, Alabama Canons of Judicial Ethics, Canon 3C. (1)(a) and 3C.(1)(d)(iii) (1975); Malone v.State, 46 Ala. App. 363, 242 So.2d 409, cert. denied, 286 Ala. 736, 242 So.2d 410 (1970). We agree with the trial judge, however, that under the circumstances of this case his recusal was not mandated. We will, therefore, not hold him in error for refusing to recuse himself.
 IV
During the course of their investigation, the local authorities searched appellant's truck and his residence, and recovered several items of evidence that were either presented or discussed at trial. There was testimony that strands of hair found on a mop in appellant's mobile home were consistent with the victim's head hair. There was testimony that a dog hair found in appellant's truck was consistent with the hair from one of the victim's dogs. Red fibers found on the carpet in appellant's home were consistent with a red fiber found on one of the victim's white socks, which were recovered from the victim's purse. A strip of white duct tape found in appellant's mobile home was of the same variety as that removed from the victim's wrists. There was also testimony that one pistol was found behind the front seat of appellant's truck and two more were found in his home.
The appellant contends that these items were inadmissible because the search warrant was invalid and because the items recovered were not within the perimeters defined in the search warrant.
 A
Appellant claims that the search warrant was invalid because the affidavit given by Deputy M.L. Kirby of the Calhoun County Sheriff's Department to the issuing magistrate *Page 454 
was insufficient to support "probable cause" for the search.
We have carefully reviewed the affidavit signed by Deputy Kirby, which was read into evidence during a voir dire examination of Kirby (R. 376), and have concluded that it was more than sufficient to support the warrant issued. Appellant's arguments in this regard are unfounded. See Waters v. State,357 So.2d 368 (Ala.Cr.App.), cert. denied, 357 So.2d 373 (Ala. 1978), and cases cited therein. Williams v. State,401 So.2d 312 (Ala.Cr.App. 1981).
The affidavit stated the pertinent facts surrounding the abduction and murder of Rebecca Howell that had been discovered pursuant to the police investigation between the date of the crime, February 4, 1982, and the date of appellant's arrest, February 22, 1982. Nearly three weeks of investigation had revealed that Howell had been abducted from the Norge Village Washeteria in Calhoun County and murdered, that her boots and purse were missing, that appellant's truck was seen at the Norge Village Washeteria when Howell was abducted, that appellant was driving the same truck at the time of his arrest, that he concealed something behind the front seat before he exited his truck, and that he locked the door of the truck to prevent the arresting officers from gaining access, therein. As in Waters, supra, these facts were more than sufficient to support the issuance of the warrant. There is no merit in appellant's argument that corroboration or additional proof of reliability was necessary for the information that Kirby obtained from "citizen informers." Hadley v. State,391 So.2d 158 (Ala.Cr.App.), cert. denied, 391 So.2d 162 (Ala. 1980).
 B
The appellant further points out that the items recovered during the search of his truck and his mobile home were not listed in the search warrant, and were seized illegally as a result of a "fishing expedition." He contends that these items were not within the perimeters of the search warrant and were, therefore, inadmissible.
It is undisputed that the warrant authorized a search for the victim's boots and purse, and that the items recovered were not in any way related to the missing boots and purse. However, a close look at the entire record on appeal reveals that any errors committed in admitting or discussing any of these aforementioned items were not harmful to appellant's case.
It was immediately pointed out that the two pistols found in appellant's mobile home belonged to his sister and her husband and were in no way connected with the appellant. See, Carrollv. State, 370 So.2d 749, 758 (Ala.Cr.App.), cert. denied,370 So.2d 761 (Ala. 1979). The appellant concedes in brief, and we agree, that the pistol found behind the seat of his truck was arguably related to the offense in question and, therefore, meets the requirements for seizure adequately outlined inSatterwhite v. State, 364 So.2d 345 (Ala.Cr.App.), rev'd on other grounds, 364 So.2d 359 (Ala. 1978): a reasonable connection between the items seized and the crime, a reasonable basis for drawing the connection, and a discovery resulting from a good faith search within the perimeters of the search warrant.
Appellant's "fishing expedition" argument is focused primarily on the hair and fiber evidence and the strip of duct tape.
The victim's wrists were bound with four strips of white duct tape. The officers executing the search warrant knew this when they went to search for the missing boots and purse. The strip of white duct tape recovered from appellant's mobile home was in plain view of the searchers and appeared to be of the same type as that found on the victim's wrists. Under these circumstances, the strip of duct tape also met the seizure and admissibility requirements discussed in Satterwhite, supra.
The hair and fiber evidence, obtained by sweeping and vacuuming certain areas of appellant's truck and home, was arguably inadmissible. However, even if *Page 455 
the seizure of this evidence was illegal and the admission of this evidence and testimony related thereto was error, it did not injure the appellant. The hair and fiber evidence was probative only to show that the victim had been inside appellant's truck and his mobile home. In statements to the authorities, revealed to the jury at trial, the appellant admitted that he had driven the victim, in his truck, to his mobile home. Her presence inside his truck and his home was, therefore, proven by appellant's own statements. For this reason, the admission of the hair and fiber evidence, if error, was not reversible error. See, Coulter v. State, 438 So.2d 336
(Ala.Cr.App. 1982), and cases therein cited.
 V
The appellant further claims that the pistol found in appellant's truck and the hair and fiber evidence, if not inadmissible because illegally seized, were inadmissible for other reasons.
 A
The appellant claims that the hair and fiber comparisons were of questionable reliability and were, therefore, misleading and "seriously prejudicial" to his case. As noted above, we have concluded that the hair and fiber comparisons were not injurious to the appellant because the victim's presence in appellant's truck and home was established by appellant's own statements. Moreover, the reliability of the hair and fiber evidence, which was disputed in the presence of the jury, was, under these circumstances, significant in determining the weight of such evidence and not its admissibility.
 B
Appellant claims that the pistol found behind the seat of his truck was used as evidence of a collateral crime and that its admission was, therefore, error. There is nothing in the record, however, that supports appellant's argument that the state was attempting to prove a collateral crime.
The evidence does indicate that the pistol is the item that appellant deposited behind the seat of his truck the morning of his arrest, just before he exited the truck and locked the door. For aught that appears, the pistol might have been used to coerce the victim into the truck on the night of the murder.
The admissibility of the evidence related to this pistol, and there was no emphasis placed thereon, was merely a question of relevancy, a determination properly left to the sound discretion of the trial court. The trial judge was in the best position to make this determination and, in this instance, we have found no abuse of discretion. Strickland v. State,348 So.2d 1105 (Ala.Cr.App.), cert. denied, 348 So.2d 1113 (Ala. 1977); Payne v. State, 419 So.2d 286 (Ala.Cr.App. 1982).
 VI
A state toxicologist, Roger Morrison, testified that a vaginal swab taken from the victim revealed that, prior to death, she had had sexual intercourse with a man who was a "group O" secretor of H antigens. Biological samples revealed that the victim's boyfriend, Murray Knight, is a non-secretor, but that the appellant is a "group O" secretor. The appellant contends that this testimony was inadmissible because 80 percent of all males are secretors of blood factors. We disagree.
"The results of examinations and test[s], blood-grouping tests, fingerprint comparisons, and ballistics tests, are admissible, provided a proper foundation is laid." Chatom v.State, 348 So.2d 838 (Ala. 1977). For examples, see, Dockery v.State, 269 Ala. 564, 570, 114 So.2d 394 (1959); and Carter v.State, 405 So.2d 957, 961 (Ala.Cr.App.), cert. denied,405 So.2d 962 (Ala. 1981).
The biological fluid comparisons in the instant case were not conclusive by any means, but they did show that appellant could not be ruled out as the man who had sexual intercourse with Rebecca Howell prior to her death. The jury was informed *Page 456 
that 80 percent of the male population were secretors, a fact which went to the weight of this evidence and not its admissibility.
The materiality of this evidence was a matter within the trial court's discretion, which was not abused, herein.Strickland v. State, supra; Payne v. State, supra.
 VII
Despite appellant's arguments to the contrary, the trial court did not err in admitting an unpleasant photograph showing the victim's hands bound by white duct tape. The trial court did not abuse its discretion in ruling that the probative value of this photograph outweighed any undue prejudice to the appellant. See, Coulter v. State, 438 So.2d 336 (Ala.Cr.App. 1982); Hopkins v. State, 429 So.2d 1146 (Ala.Cr.App. 1983);Duncan v. State, 436 So.2d 883 (Ala.Cr.App. 1983).
 VIII
After the appellant had been advised of his Miranda rights and had read and signed a consent form to take the authorities to the location of the victim's missing boots and purse, and had signed a "waiver of counsel" form, he made several incriminating statements to Sheriff Snead and eventually led Snead and other officers to the victim's missing purse. Among other things, the appellant told Snead that Rebecca Howell had entered his truck at the washeteria and had accompanied him to his mobile home, and that later she had fled from his truck into the woods near Tallaseehatchee Creek, where her body was later discovered. However, he never admitted harming Ms. Howell in any manner, whatsoever.
The appellant contends that the statements made to Sheriff Snead were inadmissible because similar statements had been made to the authorities the previous day and there was no proof that these initial statements had been preceded by Miranda
warnings.
The appellant's argument in this respect is not supported by the evidence. Joe Hubbard, an assistant district attorney for Calhoun County, testified that on the day before the appellant made the incriminating statements to Sheriff Snead, the appellant received a recitation of his Miranda rights and he, subsequently, signed a "waiver of rights" form prior to any questioning.
Furthermore, the trial court entertained extensive voir dire testimony of all available witnesses to appellant's incriminating statements, including the appellant, himself. Although the appellant testified that his statements were involuntary, there was an abundance of testimony to the contrary. The trial court ruled, in light of all the testimony, that appellant's statements were voluntary. This determination was within the sound discretion of the trial court and was amply supported by the evidence herein. See, Baldwin v. State,372 So.2d 26 (Ala.Cr.App. 1978), aff'd, 372 So.2d 32 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3043,65 L.Ed.2d 1133 (1980); Moore v. State, 415 So.2d 1210
(Ala.Cr.App. 1982); Bryant v. State, 428 So.2d 641 (Ala.Cr.App. 1982), cert. denied, 428 So.2d 646 (Ala. 1983). Therefore, the testimony concerning appellant's statements was properly admitted.
Pursuant to § 13A-5-53, Code of Alabama 1975, and in accordance with appellant's specific requests, we have carefully reviewed all the facts and circumstances of this case to determine the propriety of the death sentence for this appellant.
We have reviewed the guilt phase proceedings and the sentencing hearings and have found no errors adversely affecting the rights of the appellant. The trial court's findings concerning the aggravating and mitigating circumstances are amply supported by the evidence presented either at the guilt phase or sentencing phase hearings.[1]
Although it appears that there was extensive pre-trial publicity concerning the *Page 457 
instant case, contrary to appellant's insistencies, it does not appear that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. The trial court correctly found that this appellant had been previously convicted of two felonies involving the use or threat of violence to the person — two convictions for assault with intent to murder. This aggravating circumstance was considered in addition to the fact that the instant murder was committed during a kidnapping. The trial court correctly found that none of the enumerated mitigating circumstances existed and that the two aggravating circumstances mentioned above outweighed any other mitigating circumstances.
The sentence of death in this instance is neither excessive nor disproportionate to the penalty imposed in similar cases.
With all due respect to the rights of this appellant, his conviction and sentence of death must be affirmed.
AFFIRMED.
All the Judges concur.
[1] The trial court's findings of fact and conclusions with respect to aggravating and mitigating circumstances are attached as "Appendix A" to this opinion.
 APPENDIX A
ORDER: FINDING OF FACT BY COURT IN RE: SENTENCE HEARING. IMPOSITION OF DEATH SENTENCE
 IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA STATE OF ALABAMA, Plaintiff, VS. JAMES H. CALLAHAN, Defendant. CASE NUMBER: CC 82-424 ORDER OF THE COURT ON IMPOSITION OF SENTENCE
The Defendant in the above styled case, James H. Callahan, was charged by Indictment returned by the Grand Jury of Calhoun County, Alabama, during its March, 1982, session, with the Capital Offense of violation of Section 2 (a)(1) of Act Number 81-178 of the Acts of Alabama, Regular Session 1981, as codified in Section 13A-5-40 of the Code of Alabama, 1975 (as amended). Specifically, the said Defendant, James H. Callahan, was charged with the Capital Offense of Murder by the Defendant during a Kidnapping in the First Degree or an attempt thereof committed by the Defendant.
This case came on to be heard before the Court and a Jury of twelve men and women (and two alternate jurors who were discharged according to law) duly impaneled and sworn as required by law; whereupon the principal jurors after hearing the evidence, the Court's charge as to the applicable law, including the lesser included offenses of Murder and Kidnapping in the First Degree, (which charge satisfied both the State and Defendant's attorney) and upon consideration of the law and the evidence, found the Defendant guilty of the Capital Offense of Murder by the Defendant during a Kidnapping in the First Degree or an attempt thereof committed by the Defendant as charged in the Indictment in this case. The Jury, upon request of the Defendant, was polled as to its Verdict and the Verdict was determined to be unanimous. The Court announced the Jury Verdict on June 26, 1982, and on said date commenced a punishment phase hearing before the same Jury as required by section 13A-5-46 of the Code of Alabama, 1975 (as amended). After hearing evidence during the punishment phase the Jury was again charged as to the applicable law advising said Jury if the mitigating circumstances outweighed the aggravating circumstances proven by the State beyond a reasonable doubt, then punishment would be life imprisonment without eligibility for parole, but if the aggravating circumstances proven by the State beyond a reasonable doubt outweighed the mitigating circumstances as shown by the Court's charge, then the verdict should be death. The Jury was further charged that they must avoid any influence from passion, prejudice or sympathy to enter into their verdict one way or the other. Both the State and the Defendant's attorney again advised the *Page 458 
Court they were satisfied with the Court's charge to the Jury. After due deliberation, the Jury returned a Verdict fixing the Defendant's punishment at death. The body of said Verdict stated that the vote was ten (10) votes in favor of death and two (2) against in accordance with Section 13A-5-46, (f). Again, at the Defendant's request the Jury was polled as to whether or not the vote was correct and the Court verified that there were ten (10) individual votes in favor of death and two (2) individual votes against said punishment and in favor of a punishment of life imprisonment without possibility of parole. Upon the said Jury verdict being returned and having been read in open Court, the Court set a formal hearing for July 2, 1982, at 9:00 A.M. At said hearing the Defendant, his attorney, the Honorable Wilford Lane and the District Attorney, Honorable Bob Field, were present.
FINDINGS OF FACT BY THE COURT FROM THE EVIDENCE AND TESTIMONY PRESENTED DURING THE GUILT PHASE OF THE TRIAL
Upon consideration of the evidence and testimony presented before the Court during the guilt phase of the trial in this cause, the Court hereby finds as follows:
Rebecca Suzanne Howell, a female of the age of twenty-six (26) years, was abducted from the Norge Village Washeteria, a public washeteria, in Jacksonville, Calhoun County, Alabama, during the late night hours of February 3, 1982, or the early morning hours of February 4, 1982. At the scene of the abduction were found an automobile of the victim, personal belongings of the victim, a roll of gray colored plastic duct tape and a pair of wet blue jeans. On February 17, 1982, the body of Rebecca Suzanne Howell was recovered from the Tallaseehatchee Creek west of the City of Jacksonville and in Calhoun County, Alabama. On February 22, 1982, the Defendant, James H. Callahan, was arrested by a Calhoun County Deputy Sheriff and a City of Jacksonville police officer after a vehicle being driven by him was stopped on a public street in the City of Anniston, Calhoun County, Alabama, for and on account of it bearing a switched vehicle license tag.
At trial, evidence and testimony was produced to the effect, and the Court finds that the victim in this case, Rebecca Suzanne Howell, was the victim of a homicide and that the death of the said Rebecca Suzanne Howell was caused by asphyxiation caused by a blockage to her airway. The evidence showed, and the Court finds that upon the body of Rebecca Suzanne Howell being recovered from the Tallaseehatchee Creek that her boots, socks, panty-hose and purse were missing and her hands and wrists were found bound by four (4) separate strips of white plastic duct tape.
The Court, from the evidence and testimony, further finds that the body of Rebecca Suzanne Howell bore some evidence of physical abuse and the autopsy performed indicated the presence of human semen of a type inconsistent with the victim's fiancee but consistent with that that would be deposited by the Defendant.
The Court further finds that the Defendant, James H. Callahan, while not represented by an attorney and while acting freely, voluntarily and in full knowledge and understanding of his rights, waived his rights to silence and to an attorney and admitted to law enforcement officials that he abducted the victim and he then assisted law enforcement officials in recovering a purse belonging to the victim, which purse contained a pair of pantyhose and a pair of socks, he assisted the said law enforcement officers in recovering the pair of boots belonging to the said victim and he directed the said law enforcement officers over the route traveled by him with the victim after he abducted her, said route including a stop at a house trailer owned by the Defendant and a stop at or near the creek in which the victim's body had been found. The purse referred to was recovered in Collinsville, Alabama, at a place disclosed by the Defendant and was recovered under his direction though he denied placing the same there. *Page 459 
The Court further finds, from the evidence and testimony, that the Defendant's fingerprints were found upon the roll of gray duct tape recovered by the Jacksonville Police at the scene of the victim's abduction; that fiber evidence clearly tended to connect the Defendant with the blue jeans found at the sight of the abduction; that hair and fiber evidence clearly tended to connect the victim with the Defendant's house trailer and the Defendant's truck, being the same truck in which the Defendant was riding at the time of his arrest; and that the white plastic duct tape binding the victim's hands was identical to tape found at the Defendant's trailer after his arrest.
The Court further finds, from the evidence and testimony, that the Defendant's truck was seen at another washeteria shortly before the time the victim in this case was abducted and that an individual driving said truck was seen watching and following another lone female. The evidence and testimony further tended to show that a truck generally matching the description of the Defendant's truck was also seen at the Norge Village Washeteria at or near the time of the victim's abduction and that an individual generally matching the Defendant's physical appearance was seen inside said washeteria about such time.
The Court further finds from the evidence and testimony that the physical evidence found at the Norge Village Washeteria clearly indicated that the victim left said location involuntarily.
The Court, based upon the evidence and testimony and the Defendant's statements and actions showing his complicity in the commission of the offense charged in the Indictment, finds that the Defendant, James H. Callahan, intentionally caused the death of the victim, Rebecca Suzanne Howell, during a Kidnapping in the First Degree or an attempt thereof committed by the Defendant. While the Indictment in this case charges the Defendant with a violation of Section 2 (a)(1) of Act Number 81-178 of the Acts ofAlabama, in three separate Counts, each Count charges the commission of a murder by the Defendant during Kidnapping in the First Degree or an attempt thereof committed by the Defendant and the only variance between said Counts is the specific intent of the Defendant in committing the alleged kidnapping. The intents alleged in the respective Counts are not, in the opinion of the Court, mutually exclusive and the Court is of the opinion that the Jury properly found, from the evidence and testimony, that the Defendant possessed all of the requisite intents to sustain a conviction on each Count of the Indictment.
 FINDINGS IN REGARD TO THE PUNISHMENT PHASE OF THE TRIAL IN THIS CAUSE
In accordance with the mandate of Section 13A-5-45, et seq., the Code of Alabama, 1975 (as amended) a sentence hearing was conducted by the Court for the Jury in this cause. At said hearing the State introduced evidence, and the Court finds, that the Defendant, prior to the commission of the act made the basis of this case, was previously convicted in two cases for felonies involving the use or threat of violence to the person. The State further asked the Jury to find that the State had proven that the Capital Offense charged in the Indictment, and for which the Defendant had been convicted, was committed while the Defendant was engaged in the commission of or an attempt to commit a kidnapping, a finding that the Jury would had to have made to convict the Defendant of the Capital Offense charged.
The Defendant put on evidence in mitigation in regard to the Defendant's character, his family situation and employment record, and the fact that the felonies for which the Defendant had been convicted arose out of a domestic situation.
The Jury was charged as to the relevant aggravating and mitigating circumstances the Jury could consider; was told that it could consider any of the facts and circumstances testified to at trial in regard to the mitigating circumstances surrounding the *Page 460 
case; was charged that the State had the burden of proving any aggravating circumstances beyond a reasonable doubt; was charged that any aggravating circumstance proven by the State beyond a reasonable doubt at trial by the State which the verdict convicting the Defendant establishes was proven beyond a reasonable doubt at trial should be considered as proven beyond a reasonable doubt for the purposes of the sentence hearing; was charged that if the Jury found no aggravating circumstances existed in the case that it was required to return a verdict recommending to the trial Court that the penalty be life imprisonment without parole; was charged that if it found one or more aggravating circumstances existing but found that those aggravating circumstances did not outweigh the mitigating circumstances that the law required the Jury to return an advisory verdict recommending to the Court that the penalty be life imprisonment without parole; was charged that if it found that one or more aggravating circumstances existed and that those aggravating circumstances outweighed the mitigating circumstances proven by the State beyond a reasonable doubt that it should return an advisory verdict recommending to the Court that the penalty be death; and that the Jury should not allow passion, prejudice or emotion for or against the State or the Defendant to enter into its deliberations and verdict in any manner whatsoever. Upon the Jury being charged, both the District Attorney and the Defendant's attorney advised the Court that they were satisfied with the charge and that no exceptions were taken and the Jury retired to deliberate its verdict. As previously stated in this Order, the Jury, upon reaching a verdict was returned to open Court and in the presence of the Defendant, his attorney and the District Attorney, with the Clerk of the Circuit Court of Calhoun County, Alabama, in attendance, returned its Verdict recommending to the Court that the sentence imposed herein be death. Upon a polling of the Jury, the Court verified the accuracy of the Verdict and verified that ten (10) jurors did, in fact, vote in favor of the penalty of death and That two (2) jurors did not so vote. The Court finds the Verdict and recommended sentence were not a product of emotion, sympathy or prejudice.
FINDINGS OF FACT BY THE COURT FROM THE PUNISHMENT PHASE AND THE SENTENCE HEARING CONDUCTED BY THE COURT
In accordance with the mandate of Section 13A-5-47 of the Codeof Alabama, 1975 (as amended), the Court makes the following findings in regard to the aggravating circumstances set out by Section 13A-5-49. The Court finds
(1) That the Capital offense was not committed by a person under sentence of imprisonment;
(2) That the Defendant had not been previously convicted of another capital felony, but had been previously convicted of two separate felonies involving the use of violence to the person;
(3) The act alleged committed by the Defendant in the instant case was not one that created a great risk of death to many persons;
(4) The Capital offense was committed while the Defendant was engaged in the commission of, or an attempt to commit, or flight after committing kidnapping, specifically Kidnapping in the First Degree;
(5) The Capital offense was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
(6) The Capital offense was not committed for pecuniary gain;
(7) The Capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
(8) The Capital offense was not especially heinous, atrocious or cruel when compared to other Capital offenses and the Court makes this finding based on the interpretation of the aggravating circumstances as made by the Alabama Court of Criminal Appeals and the Supreme Court *Page 461 
of Alabama in defining heinous, atrocious or cruel.
The Court makes the following findings under Section 13A-5-51,Code of Alabama, 1975 (as amended) in regard to mitigating circumstances: the Court finds the following:
(1) The Defendant has a significant history of prior criminal activity in that it was proven that he had two prior felony convictions involving the use of violence to the person;
(2) The Defendant was not under the influence of extreme mental or emotional disturbances during the commission of the Capital offense charged in this case;
(3) The victim was not a participant in the Defendant's conduct nor did the victim consent thereto;
(4) The Defendant was not merely an accomplice in the Capital offense commited by another person but was the one and only principal in said offense;
(5) The Defendant did not act under extreme duress or under the substantial domination of another person;
(6) The Defendant did have the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law, there being no evidence or testimony to show that his said capacity was substantially impaired;
(7) The Defendant was thirty-five (35) years of age at the time of the commission of the crime charged.
In addition to the above, the Court has considered the evidence and testimony presented to the Jury and to the Court in regard to the Defendant's background and character as the same pertains to the mitigating circumstances that should be properly considered by the Court.
The Court finds that the Jury in this case was not emotionally influenced with passion, prejudice or other arbitrary factors in arriving at its findings of guilt as to the Capital offense and as to the recommendation of punishment by death.
The Court makes the further finding, as previously set out, that the Defendant did murder the victim, Rebecca Suzanne Howell, during the commission of a Kidnapping in the First Degree or an attempt thereof also committed by the Defendant.
After due consideration of all the matters that were presented to the Court during this hearing, both in mitigation and aggravation, and taking into consideration all other matters that are properly before the Court as herein above stated in this Order, this Court does now find and is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstances as shown above and brought before the Court far outweigh the mitigating circumstances shown to the Court, that said aggravating circumstances outweigh the said mitigating circumstances in all regards and that they are sufficient in both quantity and quality to more than uphold the Jury's verdict recommending the death penalty in this case.
It is, therefore, the Judgment of this Court that the Defendant, James H. Callahan, be sentenced to death by electrocution.
DONE and ORDERED this the 9th day of July, 1982.
 /s/ Samuel H. Monk, II
Samuel H. Monk, II Circuit Judge
 JUDGMENT OF COURT AND DEATH SENTENCE. AUTOMATIC APPEAL. State of Alabama vs. James Harvey Callahan CC-82-424 Indictment: Murder . . . Convicted — by Jury — as charged. Judgment and Sentence This the 8th day of July, 1982:
The Defendant is present in open Court with his Attorney, Wilford J. Lane, and the State of Alabama is represented by Robert M. Field, District Attorney of the Seventh *Page 462 
Judicial Circuit, and on the 26th day of June, 1982 the Defendant was convicted, by Jury, as charged, and under separate Verdict said Jury by vote of 10 in favor and 2 against recommending punishment by death, and sentencing was deferred and pre-sentence report ordered by the Court:
Now on this the 8th day of July, 1982 the Court finds that copy of pre-sentence report made by the State of Alabama Parole-Probation Office, George E. Wood, was transmitted to both Defense and Prosecuting Attorneys on the 1st day of July, 1982, and each acknowledges to the Court that the Report was received on the 1st day of July, 1982; and that Attorney for the Defendant and Prosecution also have a copy of "Evaluation Report" of mental examination of Defendant by Alabama State Hospital. Each of said Reports made a part of record.
Upon receiving the "verdict of Guilty" of the Jury in this Action on the 26th day of June, 1982 the Court in accordance with said verdict considered and adjudged the Defendant guilty as charged, and on this the 8th day of July, 1982 in accordance with the "verdict of guilty" the Court considers and adjudges the Defendant guilty as charged in the Indictment in this Action.
The Court proceeds upon "Pre-sentence Hearing" in open Court without the intervention of a Jury, and, under separate written Decree the Court sets out the findings of fact by the Court from the punishment phase and the sentencing Hearing conducted by the Court, said written findings and Order to be filed of record in this Action.
The Defendant now present in open Court with Attorney and being asked by the Court if he had anything to say why the sentence of the law should not now be pronounced upon him made "statement on the record" (taken down stenographically) and further answers the Court: "I am not guilty . . ."
Before passing sentence the Court proceeds to ascertain by examination of the Defendant and other evidence that he was by trade or occupation a "Field Engineer" and that he is of the white race, male sex, is thirty-five years of age (date of birth: January 6, 1947) and his physical condition is "good . . . Kidney problems . . . Epilepsy", and that he has been incarcerated since February 22, 1982, and that he presently is a State Prisoner, Probation having been revoked on the 19th day of March, 1982 by Circuit Court Judge Malcolm Street, Jr., in two prior felony convictions. (CC-82-547 CC-82-54 *) and in those two Actions additional Jail Credit was allowed from the 22nd day of February 1982 to the 19th day of March, 1982.
After consideration, it is the judgment of the Court that the Defendant, James Harvey Callahan, suffer death by electrocution and it is ordered and adjudged by the Court that said Defendant be and is hereby sentenced to death by electrocution, and the Court sets date of execution date on the 1st day of October, 1982. The Sheriff of this County shall safely transfer the Defendant to the custody of the State of Alabama, and the State's designated executioner shall, at the proper place for the execution of one sentenced to suffer death by electrocution, cause a current of electricity of sufficient intensity to cause death and the application and continuance of such current to pass through the body of James Harvey Callahan until said Defendant is dead.
The Court notes that this sentence is an automatic Appeal.
Under separate written Order entered by the Court this date the Sheriff of this County shall forthwith safely transport James Harvey Callahan to the W.C. Holman Prison Unit at Atmore, Alabama, and there deliver said Defendant to the Warden of said prison Unit pursuant to law.
(Judge Samuel H. Monk II) *Page 463