The appellant, Paul Johnson, Jr., was found guilty of capital murder and was sentenced to life in prison without parole.
Riley Turpin testified that approximately a week prior to the murder, the appellant had inquired as to the whereabouts of Ralph Sims, the victim, and stated, "I am looking for him because don't no son-of-a-bitch take no money from me or nothing else." The appellant further stated to Turpin, "I am going to kill him if I see him." Riley Turpin further testified that on the night of the murder he observed the appellant, Leon Carroll, and Sims leave the apartments in which Sims lived.
Sims's wife testified that she had seen him earlier on that same evening. She stated that he had left his apartment with intentions of going to a store and to his mother's house. Thereafter, she said both Riley Turpin and the appellant came by Sims's home looking for him.
Sims's mother testified that the appellant and Leon Carroll visited the home of Ernest Jones and attempted to purchase some .38 caliber bullets from Mr. Jones. Mr. Jones suggested that they go to the pawn shop.
Chris Morgan testified that the appellant came to his home around midnight on the night of the murder wanting to drink some liquor and watch television. He further testified that the next day the appellant returned and stated that he was in trouble because he had shot Sims. When Mr. Morgan attempted to refute the appellant's confession, the appellant stated "Yes, I did." Morgan testified that the appellant asked him to hold his pistol for him and keep it hidden; however, Mr. Morgan eventually turned the pistol over to the police.
A State's expert testified that in his opinion the bullet removed from the body of the deceased was also a .38 caliber bullet. The State also presented evidence that the tire tracks found at the scene of the offense matched those made by the appellant's vehicle. Additionally, the State presented evidence of footprints found and preserved at *Page 879 
the scene which appeared to have been made by boots worn by Leon Carroll.
Officer Sue Carey of the Phenix City Police Department testified that the appellant was read his Miranda rights and that he chose to waive those rights. He stated that he knew nothing about the shooting and was not in Phenix City on the night in question. Thereafter, the appellant offered two different accounts of what happened on the night in question. The appellant, in a taped statement, claimed that on the night in question he gave Leon Carroll a gun belonging to the appellant. He stated that he went to Sims's home because Sims owed him money. After discussing the matter with Sims, he said he and Sims left Sims's home together. The appellant stated that Sims was giving directions and, when the car stopped, Leon Carroll and Sims got out of the car, walked a few yards away, and Leon Carroll then repeatedly shot the victim.
The State also presented the testimony of Deputy Sheriff B.J. Ammons, who stated that while bringing the appellant to court on one morning of the trial, he threw salt in Mr. Ammons's eyes and tried to escape.
 I.
The appellant contends that the trial court erred in excluding from the jury panel any juror who was opposed to the death penalty. Several potential jurors were excluded from the venire by the trial court after being challenged for cause by the State because they indicated that they could not vote for the death penalty regardless of the evidence. The appellant's allegation is not based on the insufficiency of the venire members' statements under the doctrine of Witherspoon v.Illinois, 391 U.S. 510, 88 S.Ct. 1170, 20 L.Ed.2d 776 (1968) (which was later clarified in Wainwright v. Witt, 469 U.S. 412,105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Rather, the appellant argues that excluding the venire members denied him a fair trial. In Wainwright, the proper constitutional standard for exclusion was determined to be whether a prospective juror's views would prevent, or substantially impair, his performance as a juror in accordance with his instruction and his oath. Although the appellant in the present case claims that such a standard denies him his right to a "fair trial of his peers," such claim has been laid to rest by the United States Supreme Court in Lockhart v. McCree, ___ U.S. ___, 106 S.Ct. 1758,90 L.Ed.2d 137 (1986). The United States Supreme Court has stated:
 "The essence of a 'fair cross-section' claim is the systematic exclusion of 'a "distinctive" group in the community.' Duren [v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)]. In our view, groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors, such as the 'Witherspoon-excludables' at issue here, are not 'distinctive groups' for fair cross-section purposes."
Lockhart v. McCree, supra, ___ U.S. ___, 106 S.Ct. at 1765.
The appellant also argues that because the trial court is the actual sentencing authority under the capital murder statute, the State has no interest in excluding venire members because of their inability to sentence a defendant to death. Under theCode of Alabama (1975), § 13A-5-46, in cases of capital offenses, the jury shall return an advisory verdict recommending a sentence. Although this advisory verdict is not binding upon the court, it is nevertheless to be given consideration under § 13A-5-47(e) of the Code of Alabama
(1975). Furthermore, this court has held that "Witherspoon
jurors, those irrevocably committed to vote against the death penalty, are appropriately dismissed to insure a fair and impartial jury." Callahan v. State, 471 So.2d 447, 453
(Ala.Cr.App. 1983), reversed on other grounds, 471 So.2d 463
(Ala. 1985). The jury plays a key role in the sentencing phase of a capital case, as is clear in the Alabama Supreme Court's discussion of the jury's role in such sentencing in Beck v.State, 396 So.2d 645, 662-63 *Page 880 
(Ala. 1980). The trial court's exclusion from the jury panel of jurors opposed to the death penalty was proper.
 II.
The appellant argues that the trial court improperly overruled his challenge to the jury venire because of the systematic exclusion of blacks from the venire. Specifically, the appellant argues that the jury venire was unfair because it did not have the same percentage of blacks as the percentage of blacks in the population of Russell County, Alabama. In his motion, the appellant indicated that the jury venire was only 32 percent black, whereas the census figures indicated that the population of Russell County was 39 percent black. Thus, he makes no claim as to proportionality on the master list, but only as to the venire in his case.
 "[A] defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. Virginia v. Rives, 100 U.S. [10 Otto] 313, 322-23 [25 L.Ed. 667]; Gibson v. Mississippi, 162 U.S. 565, [16 S.Ct. 904, 40 L.Ed. 1075]; Thomas v. Texas, 212 U.S. 278, 282
[29 S.Ct. 393, 394, 53 L.Ed. 512]; Cassell v. Texas, 339 U.S. 282 [70 S.Ct. 629, 94 L.Ed. 839]. Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. 'Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible.' Cassell v. Texas, 339 U.S. 282, 286-87
[70 S.Ct. 629, 631, 94 L.Ed. 839] (opinion of Mr. Justice Reed, announcing judgment). We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%. See Thomas v. Texas, 212 U.S. 278, 283 [29 S.Ct. 393, 394, 53 L.Ed. 512]; Akins v. Texas, 325 U.S. 398
[65 S.Ct. 1276, 89 L.Ed. 1692]; Cassell v. Texas, 339 U.S. 282 [70 S.Ct. 629, 94 L.Ed. 839]."
Swain v. Alabama, 380 U.S. 202, 208-09, 85 S.Ct. 824, 829-30,13 L.Ed.2d 759 (1965), overruled on other grounds, Batson v.Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also Carter v. State, 53 Ala. App. 43, 297 So.2d 175, 180
(Ala.Cr.App. 1974); White v. State, 48 Ala. App. 111,262 So.2d 313, 318 (Ala.Cr.App. 1972).
 "The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or on the jury which tries him; it merely prohibits deliberate exclusion of an identifiable group from the juror selection process. . . . Mere statistical disparity between the number of blacks presumed eligible for jury duty and the number actually included in the jury roll does not of itself establish a primary inference of invidious discrimination."
Smith v. State, 364 So.2d 1, 11 (Ala.Cr.App. 1978), citingSwain v. Alabama, supra; Beecher v. State, 294 Ala. 674,320 So.2d 727 (1975); Rainer v. State, 342 So.2d 1348 (Ala.Cr.App. 1977).
 III.
The appellant argues that he lacked effective assistance of trial counsel. He cites four instances to support this allegation.
In his brief, the appellant alleges that "[t]he first instance is shown by the attorney making a motion to challenge the jury venire, but he never obtained a ruling from the Court to the challenge and thereby his right to take exception to the ruling." However, the record clearly indicates that the trial court in fact ruled upon the attorney's motion made to challenge the venire, as discussed in the previous section of this opinion.
Appellant argues, "Next the counsel for Appellant failed to adequately question all the prospective jurors." Specifically, the *Page 881 
appellant alleges that his attorney failed to ask each juror about the presumption of innocence and whether they knew any of the witnesses. The record indicates that the trial court twice instructed the entire panel as to the theory of the presumption of innocence on the first day of voir dire. Further, on the second day, during the individual voir dire, the defense counsel questioned most of the prospective jurors as to their knowledge concerning the presumption of innocence. Later, in the Court's charge to the jury, the judge again explained that the defendant must be presumed innocent at the beginning of the trial. In his opening statement, the defense counsel again explained this presumption to the jurors.
The fact that a juror knew a witness is not grounds for challenge for cause. Code of Alabama (1975), § 12-16-150. Cf.Tucker v. State, 454 So.2d 541 (Ala.Cr.App. 1983), reversed onother grounds, 454 So.2d 552 (Ala. 1984) (the relationship of a prospective juror to a witness does not as a general rule disqualify him as a juror). Further, the record indicates that the court questioned the panel as to whether any of them knew of any of the witnesses. The appellant has also failed to establish any prejudice caused to him on this basis. He has not alleged that any juror who served on his jury did in fact know a witness.
Appellant next argues, "The defense counsel failed to renew its motion to exclude the State's evidence after the Trial Court allowed the State to reopen its case and the State rested." The appellant also argues that his counsel failed to renew its motion to exclude the State's evidence at the conclusion of the appellant's case. However, the record indicates that the testimony by the additional State's witness could not have changed the court's ruling; nor would this ruling have changed if an additional motion had been made at the end of the appellant's case. There is no basis for the belief, nor is there any allegation by the appellant, that the outcome and the trial court's ruling would have been different had the additional motions been made. Moreover, because the motion to exclude was made before the State reopened its case, the issue of sufficiency was preserved for appellate review.
The appellant has failed to meet his burden underStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984), to establish that his attorney was ineffective. There has been no proof that the outcome of the trial would have been different but for the attorney's conduct; thus, the prejudice prong of the Strickland test has not been met.
 IV.
The appellant argues that the trial court erred in allowing the State to reopen its case after it had rested. The record indicates that on the morning following the day on which the State had rested its case, the appellant attempted to escape. Therefore, when court reconvened on the day of the attempted flight, the State made a motion to reopen its case "for the limited purpose of introducing evidence of flight on an incident that occurred this morning by the defendant." The defense counsel objected to the motion and the trial court overruled the motion. The sole witness to testify after the State's case was reopened was the deputy sheriff who had escorted the appellant from the jail to the courtroom that morning.
The appellant argues that this additional evidence was "totally irrelevant to the trial of murder and was highly prejudicial." However, evidence of the flight of an accused is admissible to show his consciousness of guilt. Prock v. State,471 So.2d 519 (Ala.Cr.App. 1985); Carlisle v. State,465 So.2d 1205 (Ala.Cr.App. 1984); Beaver v. State, 455 So.2d 253
(Ala.Cr.App. 1984); Howard v. State, 417 So.2d 599 (Ala.Cr.App. 1982); Crittenden v. State, 414 So.2d 476 (Ala.Cr.App. 1982).
"It was properly within the discretion of the trial court to reopen the case for the further reception of evidence after the State had rested and before the jury had been charged or begun deliberations. Harris *Page 882 v. State, 283 Ala. 148, 214 So.2d 843 (1968)." Harper v. State,420 So.2d 835, 840 (Ala.Cr.App. 1982). See also Jackson v.State, 167 Ala. 44, 52 So. 835 (1910). We hold that the trial court did not err by exercising its discretion to allow the State to reopen its case. Bristow v. State, 418 So.2d 927
(Ala.Cr.App. 1982), and cases cited therein.
AFFIRMED.
All the Judges concur.