479 So.2d 76 (1985)
Ex parte Darrell GRAYSON
(Re Darrell Grayson v. State).
83-756.
Supreme Court of Alabama.
February 15, 1985.
On Rehearing May 10, 1985.
*78 Richard W. Bell, Pelham, for petitioner.
Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston, III, Asst. Atty. Gen., for respondent.
BEATTY, Justice.
We granted certiorari pursuant to Code of 1975, § 13A-5-53, and Rule 39(c), A.R. A.P., which provide for review as a matter of right in cases in which the death penalty has been imposed as punishment. Petitioner alleges that the Court of Criminal Appeals erred in affirming the trial court's judgment of conviction of capital murder and sentence of death by electrocution. 479 So.2d 69. After consideration of the issues aptly raised and argued by petitioner and the State, we affirm the decision of the Court of Criminal Appeals.
Petitioner Grayson and Victor Kennedy (see Kennedy v. State, 472 So.2d 1092 (Ala. Crim.App.1984), entered the home of Mrs. Annie Laura Orr late at night on December 23, 1980. On finding Mrs. Orr in her bedroom, Grayson placed a pillowcase over her head and wrapped it in masking tape. During the time the two men were in Mrs. Orr's home, they took a small sum of money and each raped the victim twice. The next morning, Mrs. Orr was found dead in her home, with the pillowcase still taped over her head.
Grayson was tried by jury in the Circuit Court of Shelby County and found guilty. The sentence of death by electrocution recommended by the jury was accepted by the trial judge. Appeal from the conviction and sentence was taken, and the Court of Criminal Appeals affirmed.
Petitioner asserts seven grounds for reversal of the judgment of the Court of Criminal Appeals. That court ably addressed all of those grounds and found them insufficient to reverse the petitioner's conviction and sentence. We agree with the treatment of the issues by the Court of Criminal Appeals and direct reference to that Court's opinion. Here we briefly outline and add comment on those issues.

I.
Does the statutory $500 limit on funds for expenses incurred in the defense of an indigent defendant violate Grayson's Sixth *79 Amendment right to effective assistance of counsel?
The legislature decided in Code of 1975, § 15-12-21(d), that, up to a maximum limit of $500, the State will reimburse the reasonable expenses incurred in defending an indigent defendant on approval in advance by the trial court. Petitioner alleges that this amount did not allow him to procure the expert witnesses that were needed for his defense and, therefore, deprived him of his constitutional right to effective counsel. In Thigpen v. State, 372 So.2d 385 (Ala. Crim.App.), cert. denied, 372 So.2d 387 (Ala.1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980), the Court of Criminal Appeals held that "a denial of funds to pay defense experts ... does not amount to a deprivation of constitutional rights." The provision for funds for expert witnesses is within the discretion of the legislature, not the courts. However, the Court of Criminal Appeals recognized in the present case that "constitutional guarantees may require a state to provide an indigent criminal with expert assistance."
The only time a defendant, whether indigent or not, has the right to have an independent expert examine physical evidence is when such evidence is (1) "critical" and (2) subject to varying expert opinions. Barnard v. Henderson, 514 F.2d 744 (5th Cir.1975). To be "critical," the evidence must be the only evidence linking the accused with the crime or proving an element of the corpus delicti. Hoback v. Alabama, 607 F.2d 680 (5th Cir.1979). Even if the evidence is indeed "critical," it is not subject to independent examination unless it is also subject to varying expert opinion. White v. Maggio, 556 F.2d 1352, 1358 (5th Cir.1977). This is the law of this state. Gwin v. State, 425 So.2d 500, 508 (Ala. Crim.App.1982), cert. quashed, 425 So.2d 510 (Ala.1983). The physical evidence in this case was neither critical nor subject to varying expert opinion. Indeed, the strongest evidence connecting this defendant with the crime was not the scientific evidence at all, but the petitioner's own voluntary statements.
In this case, we agree with the Court of Criminal Appeals that the State was not constitutionally required to provide this indigent with the services of expert witnesses. See Hoback, supra. The trial judge did grant Grayson's request for funds up to the $500 limit. The defense chose to expend them on a public opinion survey of the county for purposes of challenging venue. That decision was one for defense counsel to make. But it is not constitutionally required that the State give reimbursement for every expense which defense counsel believes is needed. The legislature has decided that $500 is a reasonable amount. We do not find that this limit contravenes the defendant's Sixth Amendment rights.

II.
Does the Alabama compensation of counsel statute deny petitioner due process and equal protection of the laws in its application in capital cases?
The State provides for compensation of counsel for indigent defendants in Code of 1975, § 15-12-21(d), with a maximum of $1,000 to be allotted per case. Petitioner makes the same argument as above in regard to funds for experts, i.e., that a capital defendant cannot have effective assistance of counsel and, therefore, is deprived of liberty without due process, with such a limit on the amount to be paid to counsel. Petitioner also asserts that the statutory limit on compensation amounts to depriving him, a capital defendant, of the same protection of the laws that is provided to noncapital defendants. Petitioner bases this claim on the dubious ground that $1,000 is enough compensation for defense of noncapital cases, but is insufficient compensation for a capital defense and, therefore, that a capital defendant will not have as effective assistance of counsel as non-capital defendants have. These contentions are made on the premise that lawyers will not provide effective assistance unless paid a certain amount of money. But the legal profession requires its members to give *80 their best efforts in "advancing the `undivided interests of [their] client[s]'." Polk County v. Dodson, 454 U.S. 312, 318-19, 102 S.Ct. 445, 449-50, 70 L.Ed.2d 509 (1981). This Court, in Sparks v. Parker, 368 So.2d 528, 530 (Ala.1979), quoted the New Jersey Supreme Court as follows:
"We know of no data to support a claim that an assigned attorney fails or shirks in the least the full measure of an attorney's obligations to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and his pride. [State v. Rush, 46 N.J. 399, 405-07, 217 A.2d 441, 444-45 (1966).]"
We reaffirm this belief that attorneys appointed to defend capital clients will serve them well, as directed by their consciences and the ethical rules enforced by the state bar association. The counsel compensation statute, § 15-12-21, then, does not deprive petitioner of due process and equal protection of the laws.

III.
Did the trial court abuse its discretion in denying the defendant's motion for change of venue, so as to deny him a fair trial by an impartial jury?
Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App.1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App.1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court...."
The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, "[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978).
We agree with the Court of Criminal Appeals that there is nothing in the record below to suggest that the jurors could not or did not render a verdict based solely on the evidence presented at trial. Nor has it been shown that the trial judge abused his discretion in denying the motion for change of venue. With no showing of an abuse of discretion, the trial court's decision will be upheld.

IV.
Did the statutory limit on state-provided funds for expenses prevent defendant from proving actual prejudice in the community at large, and thus cause him to lose his request for change of venue?
"The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination," Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978), not through extensive and expensive surveys. It costs nothing to question the prospective jurors; thus the limit on available funds cannot be said to have prevented defendant from showing actual prejudice of the jurors.
*81 In some cases, the publicity surrounding the crime and the suspect may be inherently prejudicial, such that a fair trial could not be obtained in the locality. The following situations have been recognized as creating an inherently prejudicial setting: where "newsmen took over practically the entire courtroom," Sheppard v. Maxwell, 384 U.S. 333, 355, 86 S.Ct. 1507, 1518, 16 L.Ed.2d 600 (1966); where the defendant's highly sensational trial is televised, Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); where the accused confesses on television, Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); and when so many veniremen have fixed opinions that suspicion is cast upon all, Murphy v. Florida, 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975).
This case, however, does not involve such inherently prejudicial publicity. As noted above, neither are there circumstances here supporting a finding of juror prejudice.

V.
Did the denial of the pretrial motion to have the jury venire sequestered and sealed effectively deny defendant the right to a fair trial?
Petitioner contends that the statutory procedure for drawing and sealing the names of the venire was violated, thus impairing the defendant's right to a fair trial. However, there is no evidence to support this claim. We agree with the interpretation of the Court of Criminal Appeals regarding the statute containing this procedure, Code of 1975, § 12-16-70, which allows the venire list to be made available to counsel once the list is delivered by the clerk to the sheriff. This is exactly what happened below, i.e., the district attorney was given access to the jury list after it was delivered to the sheriff. It was also available to the defendant.

VI.
Did the trial judge improperly consider the offenses of robbery and burglary as aggravating circumstances?
Petitioner asserts that the trial court's consideration of robbery and burglary as aggravating circumstances, when in fact they were also part of the crime for which he was charged and convicted, was error, and thus entitles him to a new sentence hearing. For this proposition, petitioner cites Bufford v. State, 382 So.2d 1162 (Ala.Crim.App.), cert. denied, 382 So.2d 1175 (Ala.1980). But the holding of that decision was effectively renounced in Ex parte Kyzer, 399 So.2d 330, 337-38 (Ala.1981). The correct rule is that the aggravating circumstance charged in the indictment may be used as the circumstance aggravating that charge. See Kyzer, at 337.

VII.
Did the trial court err in failing to suppress defendant's confessions?
The assertion that the defendant's confessions were involuntary is not borne out by the findings of fact, nor was there evidence presented by defendant at the suppression hearing to rebut the State's showing of voluntariness. We hold with the Court of Criminal Appeals that the admission by the trial court of petitioner's statements was not in error.

VIII.
In Beck v. State, 396 So.2d 645 (Ala. 1980), this Court held:
"To insure that sentences of death will not be arbitrarily and capriciously imposed, we hold that both the Court of Criminal Appeals and this Court should examine all death sentences in light of the standards and procedure approved in Gregg [v. Georgia, 428 U.S. 143, 96 S.Ct. 2909, 49 L.Ed.2d 859]. Each death sentence should be reviewed to ascertain whether the crime was in fact one properly punishable by death, whether similar crimes throughout the state are being punished capitally and whether the sentence of death is appropriate in relation to the particular defendant. In making this final determination, the courts *82 should examine the penalty imposed upon the defendant in relation to that imposed upon his accomplices, if any." 396 So.2d at 664.
That three-prong inquiry establishes that death is the proper sentence in this case.
As to the first inquiry, defendant was convicted of violating Code of 1975, § 13A-5-31(a)(4), which manifestly is a capital offense. The defendant does not contend otherwise.
As for the second inquiry, similar crimes are being punished capitally throughout the state: e.g., Lindsey v. State, 456 So.2d 383 (Ala.Crim.App.1983), affirmed, 456 So.2d 393 (Ala.1984); Clisby v. State, 456 So.2d 86 (Ala.Crim.App.1982), affirmed in part and reversed in part, 456 So.2d 95 (Ala.), after remandment, 456 So.2d 98 (Ala.Crim.App.), 456 So.2d 99 (Ala.Crim. App.), 456 So.2d 102 (Ala.Crim.App.1983), affirmed, 456 So.2d 105 (Ala.1984).
As to the third inquiry, death is unquestionably proper for this defendant, who burglarized a house and then beat, terrorized, raped, and suffocated to death a helpless 86 year-old woman.
After a thorough examination and consideration of petitioner's grounds for reversal, we find no error, and we affirm the judgment of the Court of Criminal Appeals upholding the conviction and death sentence of Darrell Grayson by the Circuit Court of Shelby County.
AFFIRMED.
All the Justices concur.

ON APPLICATION FOR REHEARING
BEATTY, Justice.
Petitioner calls our attention to a recent decision of the United States Supreme Court, Ake v. Oklahoma, ___ U.S. ___, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which, petitioner argues, required the State of Alabama to provide him with a pathologist of his own choosing to assist him during his preparation for trial and during the trial itself. We note that under the rule of Shea v. Louisiana, ___ U.S. ___, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), Ake, if applicable, would be applied to all cases, including this case, pending on direct appeal at the time Ake was decided.
Petitioner interprets Ake as requiring that he have access, provided by the State, to a forensic pathologist who would furnish assistance to petitioner as to the cause of death of the victim, Annie Laurie Orr.
The issue in Ake, supra, was whether or not an apparently insane indigent had the right of access to a psychiatrist to determine his sanity at the time of the alleged offense. In response to that issue, the Supreme Court stated:
"We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one."
Petitioner does not claim that he was deprived of access to a psychiatrist's assistance. He claims, instead, a right to the services of a pathologist. With deference to petitioner's novel contention, there is nothing contained in the Ake decision to suggest that the United States Supreme Court was addressing anything other than psychiatrists and the insanity defense. Certainly, that decision cannot be broadly interpreted to require a State to provide experts of any category of a defendant's own choosing to assist him in preparing whatever defense he chooses. We have been cited to no other authority requiring such appointments.
APPLICATION FOR REHEARING GRANTED; OPINION EXTENDED; AFFIRMED.
All the Justices concur.