This is a death penalty case. In 1987, Siebert was convicted, pursuant to Alabama Code 1975, § 13A-5-40(a)(10), of the capital murder of Sherri Weathers and her sons, Chad and Joseph. The relevant facts surrounding the petitioner's crime and conviction are set forth adequately in the Court of Criminal Appeals' opinion, 555 So.2d 772, and need not be restated here. Two factual points need clarification, however. The record indicates that shoe prints lifted from the victims' apartment matched those found on papers located at the rear of the Porter Building, not in the defendant's apartment, as stated in the Court of Criminal Appeals' opinion. Second, the defendant gave a brief inculpatory statement to law enforcement officers while he was in Tennessee, but he did not make the detailed statement describing the crimes and his actions following his departure from the state until he returned to Talladega.
 I.
Siebert contends that before he made an incriminating statement to the police following his arrest in Tennessee, he was given improper Miranda warnings, Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and, therefore, that the statement he made in Tennessee was improperly obtained. Specifically, Siebert contends that the police officer who informed him of his rights in Tennessee before he gave his first incriminating statement stated, "Anything you say can be used against you in court," instead of "anything you say can and will be used against you in court," which is whatMiranda requires. Further, Siebert argues, any later statement he made was tainted as a result of the first statement, which he says was illegally obtained, and should not have been admitted into evidence.
Siebert's argument is without merit. He implicitly suggests that the United States Supreme Court, in deciding theMiranda case, required that the constitutional warnings administered to a defendant be an incantation of the precise language set forth in that opinion. Nothing in Miranda or in the subsequent opinions interpreting the Miranda opinion suggests any rigid requirements in the form of the Miranda
warnings. In response to an argument similar to the one made here by Siebert, the Supreme Court stated:
 "Quite the contrary, Miranda itself indicated that no talismanic incantation was required to satisfy its strictures. The Court in that case stated that '[t]he warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant.' 384 U.S., at 476, 86 S.Ct., at 1629 (emphasis supplied). See also id., at 479, 86 S.Ct., at 1630. Just last Term in considering when Miranda applied we noted that that decision announced procedural safeguards including 'the now familiar *Page 782 Miranda warnings . . . or their equivalent.' Rhode Island v. Innis, 446 U.S. 291, 297, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980) (emphasis supplied)."
California v. Prysock, 453 U.S. 355, 35960, 101 S.Ct. 2806,2809-10, 69 L.Ed.2d 696 (1981).
In fact, the Supreme Court, in the Miranda opinion, summarized part of its holding by stating, "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used
against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona,384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (emphasis added). Thus, the very language that Siebert contends violated Miranda is contained within the Miranda Court's own summary of its holding. Accordingly, we find that the warnings given to Siebert in Tennessee before he made his initial inculpatory statement sufficiently advised him of his constitutional rights and that subsequent inculpatory statements were in no way tainted by this initial statement.
Siebert also argues that the statement he made in Tennessee was involuntary because, he argues, it was conditioned on an alleged promise by the police officer that Siebert would not be questioned about the details of the murders until he returned to Alabama, and that, as a result, all subsequent statements he made were tainted and inadmissible. We disagree with Siebert's argument.
A review of the record discloses that Captain Willard Hurst of the Talladega Police Department advised Siebert of his constitutional rights under Miranda before Siebert was questioned in Tennessee. Hurst testified that Siebert stated that he understood his rights and that he was willing to make a statement. Siebert also signed a waiver of rights form before he made the statement. Hurst denied making any promises or threats to induce Siebert to make a statement. However, Hurst testified that when Siebert agreed to make an initial tape-recorded admission, he stated that he would not provide any details of the crime until they returned to Alabama. Hurst testified that the condition Siebert imposed prior to making the statement was acceptable to him.
Contrary to the position Siebert has taken before this Court, the record conclusively shows that Siebert's statement was not the result of any promise of benefit or inducement on Hurst's part. Rather, Siebert imposed a condition when he agreed to make an inculpatory statement in Tennessee but refused to provide details until later, and Hurst merely agreed to Siebert's condition. The record does not support Siebert's claim that the condition he imposed was tantamount to a promise from Hurst that rendered his statement involuntary.
Assuming that the condition that Siebert would not be questioned about the details of the murders in the statement he gave in Tennessee was, in fact, properly characterized as a promise by Captain Hurst, it did not render Siebert's inculpatory statement involuntary. The trial court is to determine whether a confession is voluntary, and the "true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor." Wallace v. State,290 Ala. 201, 275 So.2d 634, 636 (1973). Furthermore, a confession is not rendered involuntary if it was made in response to a promise of benefit that was solicited by the accused. Thomas v.State, 531 So.2d 45, 48 (Ala.Cr.App. 1988); Eakes v. State,387 So.2d 855, 860 (Ala.Cr.App. 1978). Siebert imposed the condition that he not be questioned about details of the crime in the statement he made in Tennessee; this limitation did not originate with Captain Hurst. Therefore, even if the condition is viewed as a promise, it did not affect the admissibility of the statement Siebert made in Tennessee, nor did it taint the subsequent statements Siebert made.
 II.
Siebert next argues that the trial court erred in refusing to invalidate his *Page 783 
waiver of extradition to Alabama from Tennessee. He contends that he was not advised sufficiently of his right to counsel under the extradition laws or of his right to fight extraditionpro se. He further argues that there is no evidence that he understood the rights explained to him or that he understood the importance of signing the waiver of extradition.
Siebert's contentions are not supported by the record. Roger Farley of the Tennessee Bureau of Investigation testified that Siebert appeared before a Tennessee judge who advised him that he was entitled to a hearing to determine whether he should be returned to Alabama, that counsel would be appointed to represent him if he could not hire an attorney, and that he would be entitled to bond pending such a hearing. Farley testified further that Siebert stated that he understood his rights, that he did not desire counsel, and that he wanted to waive extradition and voluntarily accompany officers from Alabama and return to this state. Siebert also signed a waiver-of-extradition form in Farley's presence.
Nothing in the record suggests that, at the time Siebert waived his rights, verbally and in writing, he was in any way impaired or that he was not cognizant of his rights or of his waiver of those rights. Accordingly, we find no infringement of Siebert's constitutional rights in the procedure followed relative to his removal from Tennessee to Alabama. See, Beecherv. State, 288 Ala. 1, 256 So.2d 154 (1971), rev'd on othergrounds, 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed.2d 317 (1972).
 III.
Siebert's next argument is that the court erred in admitting into evidence a videotape of the crime scene, which was filmed by the police before the victims' bodies were removed. Siebert contends that the videotape was prejudicial and that it was cumulative of the photographic evidence also admitted.
Captain Willard Hurst of the Talladega Police Department testified that he went to Sherri Weathers's apartment on February 24, 1986, the day the victims' bodies were discovered, which was five days after the victims were murdered. Captain Hurst videotaped the interior of the Weathers apartment before the crime scene was disturbed, and videotaped a portion of the exterior of the apartment building. He testified that he was familiar with the operation of the video camera and that it was in proper working condition on that day. He also stated that the videotape accurately portrayed the scene. The trial court admitted the videotape into evidence and permitted the jury to view it, over the defendant's objections that the tape was inflammatory, prejudicial, and cumulative, and that the portion of the tape showing the photographs of the family that were hung on the apartment walls had no probative value.
The Court of Criminal Appeals held that the trial court did not err in receiving the videotape into evidence. We agree. Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence.Chunn v. State, 339 So.2d 1100, 1102 (Ala.Cr.App. 1976). To be admissible, the photographic material must be a true and accurate representation of the subject that it purports to represent. Mitchell v. State, 450 So.2d 181, 184 (Ala.Cr.App. 1984). The admission of such evidence lies within the sound discretion of the trial court. Fletcher v. State, 291 Ala. 67,277 So.2d 882, 883 (1973); Donahoo v. State, 505 So.2d 1067,1071 (Ala.Cr.App. 1986) (videotape evidence). Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. E.g., Hill v.State, 516 So.2d 876 (Ala.Cr.App. 1987). Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. E.g., Burton v.State, 521 So.2d 91 (Ala.Cr.App. *Page 784 
1987). Finally, photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors. Hutto v. State, 465 So.2d 1211, 1212 (Ala.Cr.App. 1984).
The prosecution established the proper foundation here, and there was no question about the videotape's authenticity. Based on a review of the relevant case law, we find no abuse of discretion in the trial court's admission of the videotape into evidence.
 IV.
At Siebert's June 18, 1987, sentencing hearing, the trial court admitted into evidence a minute entry from the Circuit Court of Talladega County documenting his March 1987 capital conviction for murder during the course of a first degree robbery. The conviction was admitted as an aggravating circumstance pursuant to Code 1975, § 13A-5-49(2), which states as an aggravating circumstance the fact that "[t]he defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person. . . ." Siebert objected at trial and on appeal to the admission of the minute entry on grounds that, because he allegedly committed the murder/robbery at approximately the same time he allegedly committed the crimes charged here, it was illogical to allow evidence of the murder/robbery conviction into evidence as a "prior" conviction.
In essence, Siebert's argument appears to be that under §13A-5-49(2), only convictions obtained prior to the commission of the crime for which the defendant is being sentenced are admissible.
This argument directly contradicts the relevant Alabama statute. Code 1975, § 13A-5-39(6), provides:
 "PREVIOUSLY CONVICTED AND PRIOR CRIMINAL ACTIVITY. As used in sections 13A-5-49(2) and 13A-5-51(1), these terms refer to events occurring before the date of the sentence hearing."
The Talladega County conviction was obtained before the sentencing hearing was held in this case. Therefore, according to the plain language of the statute, the minute entry was properly admitted into evidence, and Siebert's allegation of error must fail. We have considered the petition, the briefs, and the opinion of the Court of Criminal Appeals. Furthermore, we have made an independent, thorough examination of the record for errors or defects in the proceedings that adversely affected the rights of the defendant. Having done so, we are of the opinion that the judgment of the Court of Criminal Appeals upholding Siebert's conviction and death sentence is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.