[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1111 
The appellant, Michael Brandon Samra, was convicted of capital murder for the killings of Randy Gerald Duke, Dedra Mims Hunt, Chelisa Nicole Hunt, and Chelsea Marie Hunt. The murders were made capital because the appellant committed them by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala. Code 1975. After a sentencing hearing, the jury recommended, by a vote of 12-0, that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
Because the appellant does not challenge the sufficiency of the evidence to support his conviction, a lengthy recitation of the facts of the case is not necessary. However, we have reviewed the evidence, and we find that it is sufficient to support the appellant's conviction. The evidence showed that the appellant, along with three codefendants, planned to kill Randy Gerald Duke. To conceal the murder of Randy Gerald Duke, they also killed Dedra Mims Hunt, Chelisa Nicole Hunt, and Chelsea Marie Hunt, who were present at the scene. The four codefendants obtained two handguns to carry out the plan. The appellant and one codefendant then went to the home of Randy Gerald Duke, and the codefendant shot Randy Gerald Duke. The appellant shot Dedra Mims Hunt in the face, but the shot did not immediately kill her. Dedra Mims Hunt and her two minor children, Chelisa Nicole Hunt and Chelsea Marie Hunt, ran upstairs, and the appellant and his codefendant followed them and killed them. After shooting Dedra Mims Hunt several times, *Page 1112 
they ran out of ammunition for the handguns. Therefore, they used kitchen knives to cut the throats of Chelisa Nicole Hunt and Chelsea Marie Hunt. The evidence showed that the appellant actually cut the throat of one of the minor children. They tried to make it look like the murders had occurred during a robbery, and then they left to dispose of the weapons. Upon being questioned by law enforcement officials, the appellant helped locate the weapons and made a statement in which he admitted his involvement in the murders.
 I.
The appellant first challenges the validity of §§ 15-12-21 and15-12-22, Ala. Code 1975, as applied to attorneys who represent indigent defendants.[1] Specifically, he contends that the limitations of $1,000 for out-of-court work in a capital trial, based on an hourly rate of $20, and $1,000 for work performed on appeal to this court, based on an hourly rate of $40, "curtail this court's inherent power to insure the adequate representation of the criminally accused" and should be declared unconstitutional. (Appellant's brief at p. 9.)
These limitations on compensation have withstood repeated challenges that they violate the separation of powers doctrine, constitute a taking without just compensation, deprive indigent capital defendants of the effective assistance of counsel, and deny equal protection in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama state law.See Ex parte Smith, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957,118 S.Ct. 385, 139 L.Ed.2d 300 (1997); May v. State, 672 So.2d 1310 (Ala. 1995); Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Sparks v. Parker, 368 So.2d 528
(Ala.), appeal dismissed, 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16
(1979); Stewart v. State, 730 So.2d 1203 (Ala.Cr.App. 1997), aff'd,730 So.2d 1246 (Ala. 1999); Boyd v. State, 715 So.2d 825 (Ala.Cr.App. 1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968,119 S.Ct. 416, 142 L.Ed.2d 338 (1998); Slaton v. State, 680 So.2d 879
(Ala.Cr.App. 1995), aff'd, 680 So.2d 909 (Ala. 1996), cert. denied,519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Barbour v. State,673 So.2d 461 (Ala.Cr.App. 1994), aff'd, 673 So.2d 473 (Ala. 1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996);Johnson v. State, 620 So.2d 679 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala.), cert. denied, 510 U.S. 905,114 S.Ct. 285, 126 L.Ed.2d 235 (1993); Smith v. State, 581 So.2d 497 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531 (Ala. 1991). Because this court is bound by the decisions of the Alabama Supreme Court, we are not in a position to reverse that court's approval of the current compensation system.
 "The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328."
§ 12-3-16, Ala. Code 1975. See also Barbour, supra.
Furthermore, in addition to the $1,000 for out-of-court work, §15-12-21(d) provides that counsel shall be paid $40 per hour for all hours spent in court and shall be reimbursed for any expenses reasonably incurred, as long as the trial court approves them in advance. With regard to *Page 1113 
appellate work, § 15-12-22(d) provides that counsel may be paid up to $1,000 for services performed on an appeal to this court and up to $1,000 for services performed on an appeal to the Alabama Supreme Court, in addition to reimbursement for any expenses approved in advance by the appellate court. Such expenses may include overhead expenses reasonably incurred in representing an indigent defendant. May v. State,672 So.2d 1307 (Ala.Cr.App. 1993), cert. quashed as improvidently granted, 672 So.2d 1310 (Ala. 1995). Finally, in certain circumstances, an indigent defendant may be entitled to expert assistance at the expense of the State. Ex parte Moody, 684 So.2d 114 (Ala. 1996).
In this case, the trial court approved approximately $11,800 in expenses for expert assistance for the defense — $5,300 for Dr. Natalie Davis to conduct a statistical investigation regarding pretrial publicity; $5,000 for an investigator; and $1,500 for Dr. George Twente, who provided expert testimony about gangs. At the appellant's request, the trial court also approved the payment of expenses for an MRI examination to help evaluate the appellant's mental condition. (C.R. 462.) For these reasons, the appellant's argument is not well taken.
 II.
The Appellant's second argument is that the trial court erroneously denied his motion for a change of venue due to allegedly prejudicial pretrial publicity.
 "`A trial court is in a better position than an appellate court to determine what effect, if any, pretrial publicity might have in a particular case. The trial court has the best opportunity to evaluate the effects of any pretrial publicity on the community as a whole and on the individual members of the jury venire. The trial court's ruling on a motion for a change of venue will be reversed only when there is a showing that the trial court has abused its discretion. Nelson v. State, 440 So.2d 1130 (Ala.Cr.App. 1983).'
"Joiner v. State, 651 So.2d 1155, 1156 (Ala.Cr.App. 1994)."
Clemons v. State, 720 So.2d 961, 977 (Ala.Cr.App. 1996), aff'd,720 So.2d 985 (Ala. 1998), cert. denied, 525 U.S. 1125, 119 S.Ct. 907,142 L.Ed.2d 906 (1999). "The mere fact that publicity and media attention were widespread is not sufficient to warrant a change of venue. Rather, Ex parte Grayson[, 479 So.2d 76 (Ala. 1985),] held that the appellant must show that he suffered actual prejudice or that the community was saturated with prejudicial publicity." Slagle v. State,606 So.2d 193, 195 (Ala.Cr.App. 1992). "`Moreover, the passage of time cannot be ignored as a factor in bringing objectivity to trial.'"Whisenhant v. State, 555 So.2d 219, 224 (Ala.Cr.App. 1988), aff'd,555 So.2d 235 (Ala. 1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230,110 L.Ed.2d 676 (1990) (citations omitted) (quoting Dannelly v. State,47 Ala. App. 363, 254 So.2d 434, cert. denied, 287 Ala. 729, 254 So.2d 443
(1971)).
 "In connection with pretrial publicity, there are two situations which mandate a change of venue: 1) when the accused has demonstrated `actual prejudice' against him on the part of the jurors; 2) when there is `presumed prejudice' resulting from community saturation with such prejudicial pretrial publicity that no impartial jury can be selected. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600
(1966); Rideau [v. Louisiana, 375 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963)]; Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157
(1985); Coleman v. Zant, 708 F.2d 541 (11th. Cir. 1983)."
Hunt v. State, 642 So.2d 999, 1042-43 (Ala.Cr.App. 1993), aff'd,642 So.2d 1060 (Ala. 1994).
The appellant first contends that there was prejudicial pretrial publicity that resulted in "presumptive prejudice," thus *Page 1114 
depriving him of his right to be tried by an impartial jury. For prejudice to be presumed under this standard, the defendant must show: 1) that the pretrial publicity was prejudicial and inflammatory and 2) that the prejudicial pretrial publicity saturated the community where the trial was held. Coleman v. Kemp, 778 F.2d 1487 (11th Cir. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). Under this standard, a defendant carries an extremely heavy burden of proof.
 "Hunt relies on the `presumed prejudice' standard announced in Rideau, and applied by the United States Supreme Court in Estes and Sheppard[v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)]. This standard was defined by the Eleventh Federal Circuit Court of Appeals in Coleman v. Kemp, 778 F.2d 1487
(11th Cir. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). The court stated: `Prejudice is presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held.' 778 F.2d at 1490 (emphasis added [in Hunt]). See also Holladay v. State, 549 So.2d 122, 125 (Ala.Cr.App. 1988), affirmed, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989).
 "In determining whether the `presumed prejudice' standard exists the trial court should look at `the totality of the surrounding facts.' Patton v. Yount, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The presumptive prejudice standard is `rarely' applicable, and is reserved for only `extreme situations'. Coleman v. Kemp, 778 F.2d at 1537. `In fact, our research has uncovered only a very few . . . cases in which relief was granted on the basis of presumed prejudice.' Coleman v. Kemp, 778 F.2d at 1490.
 "Hunt had the burden of showing that `prejudicial pretrial publicity' saturated the community. Sheppard, supra. '[T]he burden placed upon the petitioner to show that pretrial publicity deprived him of his right to a fair trial before an impartial jury is an extremely heavy one.' Coleman v. Kemp, 778 F.2d at 1537. `Prejudicial' publicity usually must consist of much more than stating the charge, and of reportage of the pretrial and trial processes. `Publicity' and `prejudice' are not the same thing. Excess publicity does not automatically or necessarily mean that the publicity was prejudicial.
". . . .
 ". . . In order to meet the burden of showing the necessity for a change of venue due to pretrial publicity on the grounds of community saturation, `the appellant must show more than the fact "that a case generates even widespread publicity."' Oryang v. State, 642 So.2d 979, 983 (Ala.Cr.App. 1993), quoting, Thompson v. State, 581 So.2d 1216, 1233
(Ala.Cr.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
 `"Newspaper articles alone would not necessitate a change in venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. Patton v. State, 246 Ala. 639, 21 So.2d 844
[1945]."'
 "Thompson, 581 So.2d at 1233, quoting McLaren v. State, 353 So.2d 24, 31 (Ala.Cr.App.), cert. denied, 353 So.2d 35
(Ala. 1977).
 "A review of the media coverage contained in the record on appeal demonstrates that the majority of print media coverage was reasonably factual and more or less objective. We find that the reportage by the news media did not result in the community being so `pervasively *Page 1115 
saturated' with prejudicial publicity so as to make the court proceedings nothing more than a `hollow formality.' Rideau, supra."
Hunt, 642 So.2d at 1043-44. "To justify a presumption of prejudice under this standard, the publicity must be both extensive and sensational in nature. If the media coverage is factual as opposed to inflammatory or sensational, this undermines any claim for a presumption of prejudice."United States v. Angiulo, 897 F.2d 1169, 1181 (1st Cir.), cert. denied,498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).
In support of his motion for a change of venue, the appellant introduced testimony concerning a telephone poll of 305 Shelby County citizens about the case. Of the people responding to the poll, 83.9 percent indicated that they had heard of the case. Of the 83.9 percent who had heard of the case, 20 percent indicated that they thought the appellant was guilty, 6.6 percent thought the appellant was probably guilty, 2.3 percent thought the appellant was probably not guilty, and 5.9 percent thought the appellant was not guilty. However, a majority, 65.2 percent, were uncertain as to the appellant's guilt at that time. Also, the people conducting the poll did not ask the respondents whether they could set aside what they had heard about the case and decide it based solely on the evidence presented in court. The appellant also introduced numerous newspaper articles from local newspapers and portions of newscasts by local television stations covering the case from its inception through the trial, including information as to the area covered by the media.
Although the appellant presented evidence that indicated that many of the citizens of Shelby County had heard about the case through the media, he has not shown that the information presented by the media was prejudicial. We have examined the media materials presented to the trial court, and we find that most of the reports were factual and relatively objective rather than accusatory, inflammatory, or sensational. Therefore, we conclude that the materials did not contain prejudicial information. Further, the appellant did not prove that the media attention inflamed or saturated the community so that there was an emotional tide against him. Thus, he has not shown that the pretrial publicity in this case was so inherently or presumptively prejudicial as to constitute one of those "extreme situations" that warrant a presumption of prejudice from pretrial publicity.
The appellant also contends that the jury was actually prejudiced against him.
"The `actual prejudice' standard is defined as follows:
 "`To find the existence of actual prejudice, two basic prerequisites must be satisfied. First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. Irvin v. Dowd, 366 U.S. [717,] 727, 81 S.Ct. [1639,] 1645, [6 L.Ed.2d 751, 758-59 (1961)]. Second, these jurors, it must be determined, could not have laid aside these preformed opinions and "render[ed] a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. at 723, 81 S.Ct. at 1643 [6 L.Ed.2d at 756].'
"Coleman v. Zant, 708 F.2d at 544."
Hunt, 642 So.2d at 1043.
 "Furthermore, in order for a defendant to show prejudice, the '"proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Anderson v. State, 362 So.2d 1296, 1299
(Ala.Crim.App. 1978).' Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985)."
Oryang v. State, 642 So.2d 979, 983 (Ala.Cr.App. 1993). *Page 1116 
The appellant has not shown any actual prejudice resulting from the pretrial publicity. Through the use of a jury questionnaire and individual voir dire, the trial court and the attorneys extensively questioned the veniremembers about their knowledge about the case and any effect pretrial publicity may have had on their ability to be fair and impartial. Many of the veniremembers were familiar with the facts of, and the circumstances surrounding, this offense. However, only three indicated that they were biased against the appellant based on information they obtained from the media, and the trial court excused those veniremembers for cause. The remainder of the jurors who had become familiar with the case through the media indicated, upon further questioning, that they could set aside anything they had read or heard about the case and render a fair and impartial verdict based solely upon the evidence presented at trial. In denying the appellant's motion, the trial court specifically stated:
 "With that said, the court will deny the motion for change of venue. Specifically, the court finds the best standard by which to measure that question or that issue is the standard of the statement of the jurors. We have had 70 some-odd jurors who have told us that they can decide this without regard to what they may have seen or heard.
 "There is no evidence from which the court can infer that any of those jurors are being anything other than completely truthful. And, in fact, the court finds that there is a basis to infer that they are being truthful.
 "With that said, the motion for change of venue is denied."
(R. 1391-92.) Thus, the appellant has not shown that any of the jurors were actually prejudiced against him.
For these reasons, the appellant did not show that the jurors were either presumptively or actually prejudiced against him. Therefore, the trial court did not abuse its discretion in denying the appellant's motion for a change of venue.
 III.
The appellant's third argument is that, because the trial judge has the ultimate sentencing authority in capital cases in Alabama, the trial court erred in propounding Witherspoon questions to the veniremembers during voir dire examination. In Johnson v. State, 502 So.2d 877
(Ala.Cr.App. 1987), this court addressed a similar claim as follows:
 "The appellant also argues that because the trial court is the actual sentencing authority under the capital murder statute, the State has no interest in excluding venire members because of their inability to sentence a defendant to death. Under the Code of Alabama (1975), § 13A-5-46, in cases of capital offenses, the jury shall return an advisory verdict recommending a sentence. Although this advisory verdict is not binding upon the court, it is nevertheless to be given consideration under § 13A-5-47(e) of the Code of Alabama (1975). Furthermore, this court has held that 'Witherspoon
jurors, those irrevocably committed to vote against the death penalty, are appropriately dismissed to insure a fair and impartial jury.' Callahan v. State, 471 So.2d 447, 453 (Ala.Cr.App. 1983), reversed on other grounds, 471 So.2d 463 (Ala. 1985). The jury plays a key role in the sentencing phase of a capital case, as is clear in the Alabama Supreme Court's discussion of the jury's role in such sentencing in Beck v. State, 396 So.2d 645, 662-63 (Ala. 1980). The trial court's exclusion from the jury panel of jurors opposed to the death penalty was proper."
502 So.2d at 879-80. Alabama's statutory provisions for advisory verdicts and judicial overrides of those verdicts have been approved by the United States Supreme Court. See Harris v. Alabama, 513 U.S. 504,115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Furthermore, in Witherspoon v.Illinois, *Page 1117 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Supreme Court recognized that veniremembers who have strong opinions about the death penalty may not be able to make an impartial decision as to the defendant's guilt because of those views. Because a juror's views about the death penalty, whether for or against it, may affect that juror's decision during the guilt phase of a capital trial, the appellant's argument that Witherspoon questions are irrelevant is without merit.
We further note that, during voir dire examination, the appellant submitted questions to the veniremembers about their feelings about the death penalty and challenged certain veniremembers based on their views about the death penalty. Even in capital cases, a party cannot assume inconsistent positions at trial and on appeal. Williams v. State,710 So.2d 1276 (Ala.Cr.App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998);Taylor v. State, 666 So.2d 36 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73
(Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856
(1996).
For the above-stated reasons, we reject the appellant's argument that the trial court erred in propounding Witherspoon questions to the veniremembers.
 IV.
The appellant's fourth argument is that the commutation of Judith Ann Neelley's[2] death sentence denied him equal protection of the law. However, the record does not indicate that the appellant has petitioned the governor for a commutation of his sentence and had his petition rejected. Therefore, this claim is not ripe for review. United Statesv. Smith, 96 F.3d 1350 (11th Cir. 1996); McKleroy v. Wilson, 581 So.2d 796
(Ala. 1990); Williams v. State, 548 So.2d 584 (Ala.Cr.App. 1988); Adamsv. Farlow, 516 So.2d 528 (Ala. 1987), cert. denied, 485 U.S. 1010,108 S.Ct. 1477, 99 L.Ed.2d 705 (1988).
 V.
The appellant's fifth argument is that the trial court erroneously admitted into evidence photographs of the victims and the crime scene and a videotape of the crime scene that allegedly served no purpose other than to inflame the passions of the jury. He specifically contends that it was not necessary to introduce these items into evidence because he had confessed to the crime and had described in that confession the injuries to the victims.
 "`Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence. . . . Finally[,] photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.'"
Gaddy v. State, 698 So.2d 1100, 1148 (Ala.Cr.App. 1995), aff'd,698 So.2d 1150 (Ala.), cert. denied, 522 U.S. 1032, 118 S.Ct. 634,139 L.Ed.2d 613 (1997) (quoting Ex parte Siebert, 555 So.2d 780, 783-84
(Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806
(1990)).
 [P]hotographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and are based on undisputed matters. Magwood [v. State], 494 So.2d [124, 141 (Ala.Cr.App. 1985), affirmed, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986)]. The fact that a photograph is gruesome *Page 1118 
is not grounds to exclude it as long as the photograph sheds light on issues being tried. Id. Also, a photograph may be gruesome and ghastly, but this is not a reason to exclude it as long as the photograph is relevant to the proceedings, even if it tends to inflame the jury. Id.'
 Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). Accord, Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); McElroy's at § 207.01(2)."
Parker v. State, 587 So.2d 1072, 1092-93 (Ala.Cr.App. 1991), aff'd,610 So.2d 1181 (Ala. 1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053,125 L.Ed.2d 737 (1993). Photographs that depict the crime scene are relevant and therefore are admissible. Aultman v. State, 621 So.2d 353
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 954, 114 S.Ct. 407,126 L.Ed.2d 354 (1993); Ex parte Siebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806
(1990); Hill v. State, 516 So.2d 876 (Ala.Cr.App. 1987). Also, autopsy photographs, although gruesome, are admissible to show the extent of a victim's injuries. See Dabbs v. State, 518 So.2d 825 (Ala.Cr.App. 1987).
 With regard to photographs of the victim taken after he had been shot, even though they are cumulative and pertain to undisputed matters, generally photographs that depict the external wounds on the body of the victim are admissible. Bankhead, 585 So.2d at 109. As we held in Jenkins v. State, 627 So.2d 1034 [,1045] (Ala.Crim.App. 1992), aff'd, 627 So.2d 1054 (Ala. 1993), `the state [has] the burden of proving that the victim [is] dead, and [photographs are] direct evidence on that point. Perpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence.'"
Sockwell v. State, 675 So.2d 4, 21 (Ala.Cr.App. 1993), aff'd, 675 So.2d 38
(Ala. 1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67
(1996). "There is irony in a convicted murderer's contending on appeal that pictures of the corpse of his victim might have inflamed the jury. That risk `comes with the territory.'" Grice v. State, 527 So.2d 784,787 (Ala.Cr.App. 1988). Finally,
 "'"photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert, 555 So.2d 780, 784 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See generally C. Gamble, McElroy's Alabama Evidence, § 207.01(2) (4th ed. 1991). "The photographs of the victim were properly admitted into evidence. Photographic exhibits are admissible even though they may be cumulative, . . . demonstrative of undisputed facts, . . . or gruesome. . . ." Williams v. State, 506 So.2d 368, 371 (Ala.Cr.App. 1986), cert. denied, 506 So.2d 372 (Ala. 1987).'
 "DeBruce v. State, 651 So.2d 599, 607 (Ala.Cr.App. 1993). See also Ex parte Bankhead, 585 So.2d 112 (Ala. 1991)."
Hutcherson v. State, 677 So.2d 1174, 1200 (Ala.Cr.App. 1994), rev'd on other grounds, 677 So.2d 1205 (Ala. 1996). See also Giles v. State,632 So.2d 568 (Ala.Cr.App. 1992), aff'd, 632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994);Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412
(Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687
(1993).
In this case, the trial court thoroughly reviewed each of the photographs and the videotape before admitting them into evidence. It carefully examined each photograph the State intended to introduce and refused to admit several that it determined were duplicative or unduly prejudicial. We have reviewed the photographs and the videotape, and we find that they were *Page 1119 
relevant to depict the crime scene and the injuries suffered by each of the victims. Therefore, the trial court did not err in admitting them into evidence.
 VI.
The appellant's sixth argument is that his trial attorneys rendered ineffective assistance because they allegedly did not adequately prepare and present a defense that he was not guilty by reason of mental disease or defect, even though they allowed him to enter such a plea. In an amended motion for a new trial, which was not verified, appellate counsel[3] asserted that his trial attorneys had rendered ineffective assistance because: 1) they did not petition the court for approval to hire a psychiatric expert to examine the defendant and 2) even though the appellant was examined by a psychologist, counsel did not attempt to determine whether the appellant suffered from any neurological or organic mental disease or defect that would have rendered him unable to appreciate the nature and quality or wrongfulness of his acts at the time of the offense. At the hearing on the motion, counsel for this issue reasserted the allegations made in the motion, but he did not present any evidence to support them. At the end of the hearing, the trial court stated:
 "The court is personally familiar with the actions taken by defense counsel not only generally but specifically with regard to the issue raised in this motion. I am familiar that the defendant's family I think paid the initial expert witness in this case, retained them privately, which of course they had the right to do. From having heard discussions by [defense counsel] and the State's counsel, I believe on the record, they all acknowledged that he did an outstanding job of evaluation and he did a good job.
 "There is no evidence to support from the record defendant's allegation that counsel was ineffective with regard to these issues or any issue. And again I'm reflecting back upon my personal recollection and knowledge of that and the transactions that occurred on the record and all of those did occur on the record. I mean there is not anything I'm relying on that's not part of the record because there was really none of those type discussions or issues or anything like that raised off the record."
(R. 2246-47.) Later, in its written order denying the motion, the trial court found:
 "Defendant's Amended Motion for New Trial alleging ineffective assistance of counsel at trial level is due to be denied. The court specifically finds that there is no evidence that Defendant's counsel was ineffective. In fact, the court is personally familiar with the actions of Defendant's counsel with regard to the specific issues raised in Defendant's amended motion. Defendant's amended motion for new trial is denied."
(C.R. 533.)
To prevail on an ineffective-assistance-of-counsel claim, the appellant must show that 1) his counsel's performance was deficient and 2) he was prejudiced by the deficient performance. Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Further, he must present more than bare allegations to support his claim.
 "There is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion. Tucker v. State, 454 So.2d 541, 547-48 (Ala.Cr.App. 1983), reversed on other grounds, 454 So.2d 552 (Ala. 1984); McKinnis v. State, 392 So.2d 1266, 1269 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1270 (Ala. 1981). The motion itself was unverified and was not accompanied *Page 1120 
by any supporting affidavits. Consequently, the assertions of counsel contained therein `are bare allegations and cannot be considered as evidence or proof of the facts alleged.' Thompson v. State, 444 So.2d 899, 902 (Ala.Cr.App. 1984) (quoting Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App. 1982)); Smith v. State, 364 So.2d 1, 14 (Ala.Cr.App. 1978). Similarly, statements made by counsel during a hearing on a motion for new trial cannot be considered evidence in support of the motion. Vance v. City of Hoover, 565 So.2d 1251, 1254 (Ala.Cr.App. 1990)."
Arnold v. State, 601 So.2d 145, 154-55 (Ala.Cr.App. 1992). See alsoBlount v. State, 557 So.2d 1333 (Ala.Cr.App. 1989). In this case, the appellant did not present any evidence to support his motion for a new trial on the ground that his trial attorneys had rendered ineffective assistance. New counsel's bare allegations in the unverified amended motion for a new trial and at the hearing on the motion cannot be considered evidence in support of the motion. Thus, the appellant did not satisfy his burden of proof under Strickland.
Moreover,
 "[a] distinction must be made between a failure to investigate the mental history of an accused and the rejection of insanity as a defense after proper investigation. '[A]n attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people . . . may be presumed to have some ability to evaluate the mental capacity of his client.' United States ex rel. Rivera v. Franzen, 594 F. Supp. 198, 202 (N.D. Ill. 1984). `As a practical matter, when deciding whether to present an insanity defense, the criminal defendant's lawyer is truly the final psychiatrist. It is not the role of a court to doubt his judgment. . . . Trial counsel may not reject the insanity defense `"without pursuing the basic inquiries necessary to evaluate its merits intelligently."' Rivera, 594 F. Supp. at 203. See also Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir. 1983), rehearing denied, 739 F.2d 184 (5th Cir), cert. denied, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984); Pickens v. Lockhart, 714 F.2d 1455, 1467
(8th Cir. 1983) ('[I]t is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case')."
Dill v. State, 484 So.2d 491, 498 (Ala.Cr.App. 1985) (emphasis original). See also Roy v. State, 680 So.2d 936 (Ala.Cr.App. 1996). In this case, the record shows that trial counsel adequately investigated the appellant's competence and sanity. As the trial court specifically stated, defense counsel did have the appellant evaluated by at least one mental health expert other than the State's expert. Counsel also requested and received permission to have conducted, at the State's expense, an MRI examination of the appellant to evaluate his mental condition. At trial, defense counsel presented the testimony of the psychologist who conducted the court-ordered evaluation of the appellant's competence at the time of the offense and to stand trial. She testified that, when she evaluated him, the appellant exhibited signs of anxiety and depression, insecurity about interpersonal interactions, confusion when under severe stress, and conflicts about wanting to be dependent on others and wanting to distance himself from others. She also testified that his IQ had been measured to be 73, which is on the borderline between low average and mentally retarded. Defense counsel also presented the testimony of an expert on gang activity and one of the appellant's friends to establish that the appellant had been a member of a gang and could have been acting under its influence at the time of the offense. Rather than concentrating on the insanity defense, counsel presented evidence that the appellant exhibited some signs of mental deficiency and had a low IQ and that his actions therefore might *Page 1121 
have been influenced by the gang with which he was associated. We conclude that trial counsel thoroughly investigated the insanity defense and, after determining that it was not a viable defense, chose to pursue another defense. Accordingly, we reject the appellant's ineffective-assistance-of-counsel claim.
 VII.
Pursuant to § 13A-5-53, Ala. Code 1975, we must address the propriety of the appellant's conviction and sentence of death. The appellant was indicted and convicted of capital murder because he killed two or more people by one act or pursuant to one scheme or course of conduct. See § 13A-5-40(a)(10), Ala. Code 1975.
The record does not reflect that the sentence of death was imposed as a result of the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found that the State proved only one aggravating circumstance — the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses. See § 13A-5-49(8), Ala. Code 1975. The trial court found that two statutory mitigating circumstances existed: 1) the appellant had no significant history of prior criminal activity, § 13A-5-51(1), Ala. Code 1975, and 2) the age of the defendant at the time of the offense, § 13A-5-51(7), Ala. Code 1975. The trial court also found the following non-statutory mitigating circumstances: 1) the age and maturity of the defendant; 2) the learning difficulties and disabilities of the defendant; 3) the family history and background and caring nature of the defendant; 4) the effect of gang or group involvement upon the defendant; 5) the immediate and continuing truthfulness and cooperation of the defendant with law enforcement officers; 6) the remorse the defendant expressed in statements to law enforcement officers; and 7) the fact that there are no aggravating circumstances other than that the offense was especially heinous, atrocious, or cruel when compared to other capital offenses. The sentencing order shows that the trial court weighed the aggravating and mitigating circumstances and correctly sentenced the appellant to death. Its decision is supported by the record, and we agree with its findings.
Section 13A-5-53(b)(2) requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's death sentence. After independently weighing the aggravating and mitigating circumstances, we find that the death sentence is appropriate.
As required by § 13A-5-53(b)(3), we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant killed four people pursuant to one scheme or course of conduct. Similar crimes are being punished by death throughout this state. Taylor v. State, 666 So.2d 36
(Ala.Cr.App.), opinion extended after remand, 666 So.2d 71 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120,116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Holladay v. State, 549 So.2d 122
(Ala.Cr.App. 1988), aff'd, 549 So.2d 135 (Ala.), cert. denied,493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989); Siebert v. State,555 So.2d 772 (Ala.Cr.App.), aff'd, 555 So.2d 780 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); Peoplesv. State, 510 So.2d 554 (Ala.Cr.App. 1986), aff'd, 510 So.2d 574 (Ala.), cert. denied, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987). Thus, we find that the sentence of death was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have not found any. Rule 45A, Ala.R.App.P. *Page 1122 
Accordingly, we affirm the appellant's conviction and sentence of death by electrocution.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] The appellant also argues that "this court's limitation of overhead hours to 25 hours should be declared unconstitutional." (Appellant's brief at p. 9.) This claim is not ripe for review because appellate counsel has not yet filed a fee declaration form in this case and, thus, no such limitation has been imposed in this case. Moreover, this claim is without merit because this court has abolished any limitation on overhead hours in cases in which the death penalty has been imposed.
[2] In 1983, Judith Ann Neelley was convicted of capital murder and was sentenced to death. See Neelley v. State, 494 So.2d 669 (Ala.Cr.App. 1985), aff'd, 494 So.2d 697 (Ala. 1986). In January 1999, Governor Fob James commuted her sentence to life imprisonment.
[3] The attorneys who represented the appellant at trial also represent him on appeal on all issues but his ineffective- assistance claim. However, at their request, the trial court appointed separate counsel to raise the appellant's ineffective- assistance-of-counsel claims in the trial court and to argue those claims on appeal.